**In re Joseph A. FENLON, Respondent.**

**No. 70265.**

Supreme Court of Missouri,
En Banc.

Aug. 1, 1989.

As Modified on Denial of
Rehearing Sept. 8, 1989.

---

Robert H. Burns, Clayton, for informant.

Gregory G. Fenlon, Clayton, for respondent.

COVINGTON, Judge.

The Bar Committee of the Twenty–First Judicial Circuit of the State of Missouri instituted disciplinary proceedings against respondent Joseph A. Fenlon, charging him with several counts of professional misconduct arising from his representation of Mrs. Darlene Hutchison in a personal injury claim. After a plenary hearing, appointed Special Master, the Honorable Jack O. Edwards, found that respondent had violated *Rules 1.4*, *1.15(a)* and *1.15(b)* of *Rule 4* (Rules of Professional Conduct), resulting in a violation of *Rule 8.4(a)* of *Rule 4*, in that respondent failed to keep Mrs. Hutchison informed about the status of her claim, including its settlement; failed to notify Mrs. Hutchison of the receipt of settlement monies or promptly deliver such monies to her; and failed to hold Mrs. Hutchison's funds in a separate account, commingling the funds with his own. The Master recommended that respondent be disbarred and that a motion for reinstatement not be entertained for two years from the date of disbarment. After independent review of the record, this Court agrees with the Master's findings and orders the respondent disbarred.

## THE FACTS

On September 4, 1985, Mrs. Hutchison engaged respondent to represent her in connection with injuries she sustained in a car accident. Respondent had previously represented Mrs. Hutchison in connection with a worker's compensation case and, on occasion, Mrs. Hutchison referred other clients to respondent. At the September 4th meeting, Mrs. Hutchison and her husband signed a contingent fee agreement and a medical authorization allowing respondent to obtain Mrs. Hutchison's medical treatment information from the appropriate health care providers.

Although Mrs. Hutchison received emergency treatment at St. Mary's Health Center immediately after the accident, she did not have a physician to provide further treatment. Respondent consequently directed Mrs. Hutchison to visit a Dr. Chand, a neurologist and client of respondent.

Since Mrs. Hutchison did not have insurance, respondent also agreed to guarantee the payment of any treatment costs incurred by Mrs. Hutchison at St. John's Mercy Medical Center. Dr. Chand subsequently sent Mrs. Hutchison to St. John's on several occasions for physical therapy and X-rays. Mrs. Hutchison was eventually released from treatment as fully recovered in November, 1985.

On or about January 15, 1986, Mrs. Hutchison went to respondent's office to discuss her injury claim and to gather information about a possible bankruptcy for her husband. At that time, respondent stated that the insurance company had made an offer of approximately $4500.00 on the injury claim, but that respondent turned it down because he knew that they could obtain a greater amount.

Through February of 1986, Mrs. Hutchison made several attempts to reach respondent by telephone to check the status of the claim. Often times, respondent was not in the office, but on occasions when he was available, he told Mrs. Hutchison either that the insurance company was not ready to settle or that he had not been able to contact the necessary person. In one such conversation, however, respondent reported the insurance company had raised the offer to $7000.00. Mrs. Hutchison authorized respondent authority to settle for that amount.

Without Mrs. Hutchison's knowledge, respondent settled the case on January 8, 1986, for $8,674.45 and received a settlement check in that amount from the insurance company on January 15, 1986, along with a release of claims. Respondent signed Mrs. Hutchison's name to both documents, returned the release to the insurance company, and deposited the check in his regular office account, even though he also maintained a trust account.

By early March, 1986, Mr. and Mrs. Hutchison became frustrated about the apparent delay in settling the claim. On March 7, 1986, Mr. Hutchison telephoned the insurance company to inquire about the claim. The company informed Mr. Hutchison that it settled in January. Mr. Hutchi-

son requested, and ultimately received, a copy of the check and release that the company had sent previously to respondent.

At Mr. Hutchison's behest, Mrs. Hutchison immediately called respondent and inquired whether respondent had heard anything from the insurance company. Respondent replied in the negative, but added that he was scheduled to speak with a representative of the company within the next few days and would call as soon as he heard something. Mrs. Hutchison did not reveal to respondent that she had discovered that the matter had been settled. Respondent did not report back to Mrs. Hutchison. Neither of the Hutchisons spoke with respondent after the March 7, 1986, telephone conversation.

Mrs. Hutchison described the developments to a friend who spoke to her own attorney and inquired whether anything could be done to hasten the release of the money. The attorney telephoned respondent and informed him that Mrs. Hutchison wanted her money. Respondent and the attorney discussed the amount that Mrs. Hutchison should have received from the settlement. As a result of this conversation, on March 28, 1986, respondent sent Mrs. Hutchison a check in the amount of $3,252.00.

Respondent never advised Mrs. Hutchison as to how he calculated the amount she received or how he distributed the total settlement. The evidence established that $1,678.10 of the settlement paid hospital bills at St. Mary's Health Center and St. John's Mercy Medical Center. The bills were not paid, however, until April 1, 1986. Because of the delay in payment, Mrs. Hutchison was denied access to the family planning clinic at St. John's, and, as a result, Mrs. Hutchison alleges that she had an unplanned pregnancy.

Respondent claims that Dr. Chand's bill was also paid from the settlement money by allowing Dr. Chand a $757.00 credit on a preexisting $1,000.00 account receivable owed to respondent. Respondent presented no documents indicating a payment or credit to Dr. Chand, however, nor any proof of an account receivable against which the settlement money could be applied.

Finally, respondent also deducted his contingent fee in the amount of $2,891.48 from the settlement.

The check which Mrs. Hutchison ultimately received was drawn on respondent's trust account and not the office account into which respondent initially deposited the settlement check. From January 3, 1986, until March 26, 1986, the trust account lacked sufficient funds to pay the amount due Mrs. Hutchison. A deposit was made to the trust account on March 26, 1986, for the purpose of covering the check to Mrs. Hutchison. For substantial periods of time from January 15, 1986 (the date the settlement check was deposited) until March 28, 1986 (the date of the check to Mrs. Hutchison), the balance in the office account was insufficient to cover the amount owed to Mrs. Hutchison.

On March 18, 1986, Mrs. Hutchison wrote a letter of complaint to the Bar Committee. Mrs. Hutchison also instituted a civil suit against respondent based on his actions in handling her personal injury settlement.

Respondent challenges the factual findings and conclusions of the Master. Respondent contends that he informed Mrs. Hutchison about the settlement at the January 15, 1986, meeting and, although he did not tell her the terms or amount of the settlement, she did not inquire. Respondent further claims that he told Mrs. Hutchison that he would hold the settlement until she and her husband made a final decision with respect to her husband's bankruptcy because of respondent's concerns about creditor preference. Respondent contends that the Hutchisons did not contact him thereafter and, in the press of business, he forgot about the matter until he was contacted by an attorney who advised him that the Hutchisons no longer intended to pursue bankruptcy. Respondent states that he then immediately forwarded to Mrs. Hutchison her share of the settlement proceeds.

The record supports the version of the events as found by the Master. Respondent willfully and deliberately failed to inform Mrs. Hutchison that he had settled the case and had received settlement monies. Then, without good cause, respondent willfully and deliberately failed to make prompt delivery of the funds to Mrs. Hutchison. Respondent released the money only after being contacted by another attorney. In addition, during the period that respondent held the funds, he commingled the Hutchisons' money with his own and then used the money without the Hutchisons' consent.

## THE PROCEDURE

Respondent alleges that the proceedings below contained numerous procedural errors, which serve to divest this Court of jurisdiction.

### I

Respondent argues, initially, that the Information filed by the Bar Committee should be dismissed because: (a) the requisite informal hearing was not held prior to the issuance of the Notice of Formal Hearing; (b) the Committee failed to prove that, at the informal stage, the Committee found, or had sufficient evidence to find, reasonable cause to believe respondent had committed professional misconduct; (c) the record of the informal investigation was not sent with the Notice of Formal Hearing; and (d) the Notice of Formal Hearing was not signed by a member of the Committee as required by the *Rules.*

■ The *Rules* do not require an informal hearing. *Rule 5.12* provides, in pertinent part, that "[t]he Committee shall have the power ... to investigate in a summary and informal manner, any matter of professional misconduct...." *Rule 5.12* further provides that "[i]f, after completion of such investigation, a majority of the Committee finds that there is reasonable cause ..., it may cause a formal proceeding to be instituted...." Thus, the *Rules* require only that the Committee undertake an informal investigation, not a hearing.

In the present case, the Committee initiated an investigation of Mrs. Hutchison's complaint. The investigation record consisted of the following: copies of Mrs. Hutchison's complaint letter; the contingent fee agreement; the medical authorization; respondent's demand letter to the insurance company; the settlement check; the release of claims; bank statements for respondent's office account; bank statements for respondent's trust account; respondent's check to the Hutchisons; and the checks for Mrs. Hutchison's hospital bills.

This record constituted a sufficient basis upon which the Committee could determine whether there was reasonable cause to move forward with formal proceedings. Mr. Russell Willis, special representative to the Committee, testified that, on this record, a majority of the quorum of Division 1 of the Committee voted to issue the Notice of Formal Hearing. The investigative record was attached to the Notice of Formal Hearing as exhibits and delivered to respondent at the same time as the Notice. Mr. Richard Wolff, a member of the investigating Division of the Committee, signed the Notice.

The informal stage of the proceedings was conducted in accordance with the *Rules.*

### II

Respondent next contends that the Information is defective because, at the formal hearing, the Committee failed to follow the *Rules,* deviating from the Notice of Formal Hearing, surprising respondent and denying him due process. Respondent further contends that through statements at the formal hearing, the Committee waived all but the commingling charge.

■ *Rule 5.13* states that "[t]he notice shall be sufficient if it states briefly the grounds upon which the proceedings are based." *Rule 5.13* does not require that the Notice specify each and every *Rule* the Committee believes was violated through the alleged misconduct. The Notice of Formal Hearing is not a formal charging document in the nature of an Information.

The purpose of the Notice is to provide a respondent with notice of the basic matters and charges to be addressed at the formal hearing. The purpose of the formal hearing is to determine only whether there is probable cause to believe that a respondent is guilty of the misconduct charged. In making that determination, "the Committee shall consider only the evidence received by it and made part of the formal hearing ... touching the allegations of misconduct contained in the formal notice." *Rule 5.13(h)*. If a majority of the Committee finds probable cause, then an Information is filed wherein the "specific act or acts of misconduct charged ... shall be specifically stated." *Rule 5.15*.

In the present case, in pertinent part, the Notice stated:

> "That on or about January 15, 1986, you settled a personal injury claim on behalf of a certain Darlene Hutchison, that you did not promptly notify Ms. Hutchison of your receipt of the proceeds of the settlement of her claim, and that you deposited the settlement proceeds to an account which was not separate from your own funds; that this conduct constitutes a violation of Missouri Supreme Court Rule 4, Rules 1.15(a) and (b)."

Attached to the Notice was the record of the informal investigation, parts of which the respondent furnished to the Committee during the investigation.

The Notice and investigative record in this case sufficiently apprised respondent of the alleged misconduct to be addressed at the formal hearing. The Committee's inquiry at the formal hearing was not limited to the strict language of the Notice, and, contrary to respondent's assertions, the inquiry did not reach matters outside the scope of the conduct described in the Notice. The Committee did not drop or waive any charges or lines of questioning at the formal hearing. Respondent participated in the formal hearing, cross-examined the witnesses and testified directly.

Respondent received a full and fair hearing in compliance with the *Rules* and was not denied due process.

## III

Respondent next asserts that the Information should be dismissed because, after the Information was filed, the Committee filed a second Notice of Formal Hearing, resulting in cancellation of the first Notice, and thereby removing any basis for the Information when the second Notice was ultimately dismissed.

After the formal hearing, the Committee filed an Information specifically delineating the charges and describing the conduct alleged to be in violation of the *Rules*. Along with his answer, respondent filed a motion to strike certain parts of the Information, alleging that the charges in the Information exceeded the matters raised in the Notice of Formal Hearing. In response, the Committee filed a second Notice of Formal Hearing, outlining the matters alleged by respondent to be beyond the scope of the first Notice and calling for a supplemental hearing. Respondent then filed objections to and a motion to dismiss the supplemental hearing. The Committee convened the supplemental hearing but discussed only respondent's motion. The Committee indicated that it intended to certify respondent's objections to the supplemental hearing to this Court for decision. Although this was not done, the Committee took no further action on the second Notice. Instead, the parties proceeded to the hearing on the Information before the Master. Prior to that hearing, respondent filed a motion to dismiss the Information or, alternatively, to strike the added charges. Before taking evidence, the Master heard argument on respondent's motion to dismiss or strike, in part, the Information, as well as respondent's motion to dismiss the second Notice.

The Master sustained respondent's motion to dismiss the second Notice on the ground that the Committee failed to comply with *Rule 5.13(c)*. The Master overruled respondent's motion to dismiss the Information, but sustained, in part, the motion to strike, ordering stricken from the Information allegations deemed beyond the scope of the first Notice of Formal Hearing.

In support of his argument that the Information should be dismissed in its entirety because of the filing of the second Notice of Formal Hearing, respondent cites § 545.110, RSMo 1986; *State ex rel. Buresh v. Adams,* 468 S.W.2d 18 (Mo. banc 1971); *Laux v. Motor Carriers Council of St. Louis, Inc.,* 499 S.W.2d 805 (Mo.1973); and *Welch v. Continental Placement, Inc.,* 627 S.W.2d 319 (Mo.App.1982).

Section 545.110 pertains to criminal indictments and informations and states, in essence, that if two indictments for the same offense are pending, the first indictment shall be deemed suspended. *See, State v. Reichenbacher,* 673 S.W.2d 837, 838 (Mo.App.1984).

A Notice of Formal Hearing under *Rules 5.12* and *5.13* is not equivalent to a criminal information or indictment. Moreover, the case law interpreting § 545.110 makes clear that the first charging document is merely suspended, not quashed, by the issuance of a second charging document, and the first document can be restored if the second document is dismissed. *State v. Reichenbacher* at 838; *State v. Granberry,* 530 S.W.2d 714, 719 (Mo.App.1975). Thus, to the extent that § 545.110 is at all instructive in the present case, it serves to confirm that notwithstanding the filing and dismissal of the second Notice, the first Notice of Formal Hearing remained a sufficient predicate for filing and review of the instant Information.

The cases cited by respondent do not alter this conclusion. *Buresh* concerned the question of whether the defendant received a preliminary hearing on a charge contained in a pending information. *Laux* and *Welch* concerned the relation back of amendments to pleadings. These cases do not support respondent's argument.

In sum, the Information is not subject to dismissal because of the filing of the second Notice of Formal Hearing.

### IV

■ Alternatively, respondent contends that certain portions of the Information not stricken by the Master should be stricken because they were not specifically raised in the Notice of Formal Hearing. Respondent further suggests that the Master acted improperly in finding violations of *Rules* not specified in the Information or the Notice of Formal Hearing.

As suggested previously in this opinion, respondent's first argument misconstrues the role of the Notice of Formal Hearing. Further, the Information is not limited to nor intended to be a mere parroting of the Notice. Rather, the Information is limited to those matters upon which fair notice was provided through the Notice and upon which evidence was received and made a part of the record at the formal hearing. *See, Rule 5.13(h).*

In the present case, the Master struck those portions of the Information that arguably went beyond the notice provided by the Notice of Formal Hearing. By contrast, the remaining portions of the Information were directly brought into issue by the Notice and had substantial evidentiary support in the record of the formal hearing. Thus, the Information, as modified by the Master, complied with the *Rules.*

■ Additionally, there is no error in the Master's finding that respondent violated *Rules* not specifically cited in the Information. *Rule 5.15* does not require that the Information set forth the specific *Rules* that have been violated but, rather, requires that the Information set forth the specific "act or acts of misconduct charged." Here, the Information fully described the acts of misconduct charged, including the allegation that respondent failed to inform Mrs. Hutchison about the settlement of her injury claim. This action constituted not only a violation of the specific requirements of *Rule 1.15(b),* but also a violation of the more general duty to inform mandated by *Rule 1.4(a).* Moreover, the charge and ultimate proof that respondent violated any one of the Rules of Professional Conduct provides a sufficient basis for the further conclusion that respondent engaged in professional misconduct within the purview of *Rule 8.4(a).*

Accordingly, the Master's conclusions regarding *Rule* violations were within the

scope of the misconduct charged in the Information and concerned matters upon which respondent had notice and a full and fair hearing.

V

As a further argument for dismissing the Information, respondent contends that the Committee failed to adduce proof that the Committee found probable cause to believe the truth of the charges contained in the Information. This contention is specifically rebutted by the testimony of Mr. Willis, who stated that, by unanimous vote, a quorum of the investigating Division of the Committee found probable cause to believe respondent engaged in the professional misconduct charged in the Information and that the Information reflected this conclusion.

█ In a related vein, respondent argues that the Information is defective because a majority of the Division of the Committee, rather than a majority of the full Committee, made the finding of probable cause. *Rule 5.10* states that "the Committee may sit en banc or in divisions as the Committee may from time to time determine." *Rule 5.10* further states that "[e]ach Division shall ... have the same powers and duties and follow the same procedures as provided by these Rules for the full Committee." Accordingly, there was no violation of the *Rules* in the present case where a Division of the Committee found probable cause and filed an Information against respondent.

█ Finally, respondent contends that the Information is defective because the Chairman and Secretary of the full Committee, rather than Committee members who were part of the investigating Division, signed the Information. *Rule 5.15* states that the Information "shall be signed by the Chairman and Secretary, or by a majority of the Committee." *Rule 5.10* states that "[t]he Chairman of the full Committee shall be the chief administrative officer and shall assign investigations and hearings to the Divisions...."

Accordingly, the present Information was not deficient since the Chairman and Secretary of the full Committee signed the Information by authority of the *Rules* and, in the Chairman's case, under authority of his position as chief administrative officer and supervisor of the Division.

VI

Respondent next contends that he was deprived of adequate notice of the charges and a full and fair hearing before the Master because the Master ruled on his motion to strike parts of the Information immediately prior to the hearing.

This contention is without merit. Respondent had notice of the charges well in advance of the hearing before the Master, as reflected by the Notice and Information filed by the Committee, the informal investigative record and the record of the formal hearing, and the comprehensive motions and pleadings filed by respondent himself. Moreover, respondent failed to request additional time after the Master made his ruling and, thus, did not timely raise his claim of error.

VII

Respondent also contends the Master erred in ruling on several evidentiary matters. Respondent asserts that minutes from the file of the insurance company should not have been admitted as business records. Respondent is foreclosed from making this claim, however, since, at the hearing, respondent acknowledged he reviewed the insurance company's files and specifically waived the right to object to the materials as not constituting business records.

Respondent next asserts that the Master erred in admitting testimony regarding respondent's signing of Mrs. Hutchison's name to the release and the settlement check since the Master previously struck portions of the Information involving these actions. This claim is without merit, however, as the evidence was admissible and probative with respect to the remaining charges of failing to inform his client that he had settled the case and received the check and of commingling the client's funds with his own.

142 of his client, either

**142** ■

Respondent's last claim is that the Master erroneously prevented respondent from inquiring into Mrs. Hutchison's understanding of the difference between her civil action against respondent and the disciplinary proceeding, since such testimony would have revealed Mrs. Hutchison's interests and bias. Again, this claim is without merit. Respondent was allowed to question Mrs. Hutchison about her civil action and, in doing so, respondent established her possible interests and bias. Accordingly, respondent was not prejudiced by the Master's decision to foreclose further questioning.

Respondent received a full and fair hearing before the Master.

### THE SANCTION

■ Respondent asserts that, taking into consideration the circumstances and mitigating factors, the appropriate sanction in this case is not disbarment but private admonishment or reprimand.

In support of this claim, respondent points to, among other things, his own health problems, his good works, and his distinguished service and character. Respondent also submits that he did not intend to deprive Mrs. Hutchison of her share of the settlement monies, that there was no threat of financial loss or financial loss in fact, and that he did not profit from his alleged wrongdoing.

While the Court acknowledges respondent's evidence of good character and reputation, this evidence is tempered by the fact that respondent has previously been subjected to a disciplinary inquiry, which resulted in the issuance of a private admonishment. Further, respondent's explanation of his conduct is logically inconsistent and does not present persuasive mitigating circumstances. *See, In re Witte,* 615 S.W.2d 421, 428 (Mo. banc 1981).

■ In disciplinary proceedings, the Court strives to protect society and maintain the integrity of the legal profession. *In re Mentrup,* 665 S.W.2d 324, 325 (Mo. banc 1984). It is always grounds for disbarment when an attorney has misappro-

priated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds entrusted to his care. *Id.* Restitution of the converted funds is no defense to these charges. *Id.*

Similarly, neglecting one's duty to keep one's client informed about the status of a matter, particularly the settlement of a law suit to the client's advantage, justifies disciplinary action. *In re Mendell,* 693 S.W.2d 76, 77 (Mo. banc 1985). Fraud and deception practiced upon one's clients cannot be reconciled with the professional standards demanded of members of the bar of this state. *In re Mendell* at 78; *In re Mentrup* at 325.

■ Disbarment is the ultimate sanction and should be reserved for a clear case. *In re Mendell* at 78. In the present case, the Court finds that the misconduct of respondent was willful, deliberate, inexcusable and a violation of Rule 1.4(a) (failure to keep the client reasonably informed about the status of the matter), *Rule 1.15(a)* (failure to hold the funds of the client separate from respondent's own) and *Rule 1.15(b)* (failure to promptly notify the client of the receipt of funds in which the client had an interest), each of which constitutes a violation of *Rule 8.4(a)* as professional misconduct under *Rule 4* (Rules of Professional Responsibility). The case is clear and no lesser sanction is warranted.

The Court orders respondent disbarred.

All concur.