**In re Milton W. SCHAEFFER,
Respondent.**

No. 72242.

Supreme Court of Missouri,
En Banc.

Jan. 28, 1992.

Rehearing Denied Feb. 25, 1992.

Melroy B. Hutnick, Belleville, Ill., for informant.

Milton W. Schaeffer, St. Louis, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

COVINGTON, Judge.

This is an original disciplinary proceeding instituted by the Bar Committee of the 21st Judicial Circuit pursuant to *Rule 5,* against respondent, Milton W. Schaeffer. The amended information charged respondent with numerous violations of *Rule 4, DR 5–105(A)* and *(B); DR 7–104(A)(2), DR 5–107(B); DR 1–102(A)(4), (5)* and *(6); DR 1–102(A)(2), (5), (7)* and *(8); DR 6–101(A)(3); DR 7–101(A);* and *Rule 1.15(a), (b)* and *(c).*[1] The information further alleged violations arising from respondent's failure to cooperate with the Bar Committee in its investigation of three complaints not related to the present proceeding and recited the fact that respondent had, within a period recently preceding the filing of the information, received and accepted admonitions relative to two other complaints. In this Court the informant proceeds on matters related to Stanley Strauss and Elvira Cowell.

■■■ This Court appointed as Master to hear the proceeding the Honorable Kenneth W. Pratte, Judge of the 24th Judicial Circuit. Judge Pratte made findings and recommended that respondent be disbarred. In a disciplinary proceeding the Master's findings, conclusions and recommendations are advisory in nature. This Court reviews the evidence *de novo,* determines independently the credibility, weight and value of the testimony of the witnesses, and draws its own conclusions of law. *In re Waldron,* 790 S.W.2d 456, 457 (Mo. banc 1990). Discipline is warranted when a respondent's guilt is established by a preponderance of the evidence. *In re Stricker,* 808 S.W.2d 356 (Mo. banc 1991).

After independent review of the record, this Court agrees substantially with the Master's findings and recommendations and orders disbarment.

## THE STRAUSS MATTER

■■ In 1981 Stanley Strauss retained respondent to represent him in dissolution of marriage proceedings. He was referred to respondent by Debra Lynn with whom Mr. Strauss had developed a close relationship. Following the dissolution of the marriage of Mr. Strauss and his wife of many years, Mr. Strauss married Debra Lynn. Mr. Strauss and Debra Lynn remain married.

While the dissolution proceeding was pending and while respondent was acting as attorney for Mr. Strauss in the dissolution proceeding, Mr. Strauss and Ms. Lynn together conferred with respondent on numerous occasions with respect to Mr. Strauss's wish to make a gift to Ms. Lynn in the amount of $40,000. Ms. Lynn apparently claimed that she needed money for a real estate investment in Rhode Island. Mr. Strauss was apparently willing for Ms. Lynn to have the money without qualification. The money was to come from an inheritance due Mr. Strauss. Both Mr. Strauss and Ms. Lynn requested that respondent assist them in determining a means of transferring funds without the adult children of Mr. Strauss becoming aware of it; the children were strongly opposed to their father's relationship with Ms. Lynn.

Although respondent initially advised Mr. Strauss and Ms. Lynn that there was not a legitimate way to effect a transfer of monies without knowledge of Mr. Strauss's children, respondent eventually agreed to assist Mr. Strauss and Ms. Lynn. Respondent prepared a petition for a lawsuit styled "Debra Lynn v. Stanley Strauss" in which respondent purported to represent Debra Lynn against Stanley Strauss. To conceal from the children what was taking

---

**1.** References are to the Supreme Court Rules. Disciplinary Rule (DR) references are to former *Rule 4,* the Code of Professional Responsibility. Former *Rule 4,* effective January 1, 1971, governed during the period of some of the incidents giving rise to this proceeding. The Code of Professional Responsibility has since been replaced by the Rules of Professional Conduct as adopted on August 7, 1985, and effective on January 1, 1986.

place, respondent arranged for the petition to be filed in Franklin County, a county where neither of the parties or Mr. Strauss's family were known. Stanley Strauss paid the filing fee. Employees of respondent prepared a consent to judgment that Mr. Strauss signed. Mr. Strauss and Ms. Lynn personally took the petition and consent to judgment to Franklin County for filing in the circuit court. Respondent charged Mr. Strauss $2,500 for services related to the proceeding.

Prior to the filing of the petition in Franklin County, respondent telephoned the circuit judge in Franklin County to inquire whether the judge would have any objections to what respondent characterized as a friendly suit being filed in Franklin County by two residents of St. Louis County. According to respondent, the judge voiced no objections. The circuit court later entered judgment in the amount of $40,000 in favor of Ms. Lynn and against Mr. Strauss. Upon contact by representatives of the Strauss family subsequent to entry of judgment, however, the trial court on its own motion set aside the judgment. The record reflects that the children of Mr. Strauss later instituted proceedings in the probate division of the Circuit Court of St. Louis County seeking appointment of a conservator for Stanley Strauss. A conservator was appointed and the conservatorship remains in effect.

*DR 5-105(A)* prohibits a lawyer from accepting employment if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment. *DR 5-105(B)* prohibits a lawyer from continuing multiple employment if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be adversely affected by representation of another client. According to *DR 7-104(A)(2)* a lawyer shall not give advice to a person who is not represented by the lawyer, other than the advice to secure counsel, if the interests of such person had or have a reasonable possibility of being in conflict with the interests of the lawyer's client.

The only exception to the prohibition that a lawyer may not represent interests that are conflicting is where the lawyer can adequately represent the interests of all parties and obtains express consent of all concerned after a full disclosure of the facts. *DR 5-105(C)*. The exception cannot apply where one of the parties is incapable of giving consent. *In re Pfiffner's Guardianship*, 194 S.W.2d 233, 236 (Mo.App.1946). Where a lawyer seeks to justify dual representation on the basis of the parties' consent, the consent must be knowing, intelligent, and voluntary. *Matter of Dolan*, 76 N.J. 1, 384 A.2d 1076, 1081–82 (1978). Consent purportedly given by a client whom the lawyer should reasonably know lacks capacity to give consent is ineffective. The client must be of sufficiently sound mind to assent to the conflict, to understand the consequences of consent, and to exercise judgment in the matter. *See* Restatement of the Law Governing Lawyers, Tentative Draft 4, § 202 cmt. g (ii) (April 10, 1991). The lawyer is required to examine the individual client's ability to receive and analyze information about the conflict and its consequences. Charles W. Wolfram, *Modern Legal Ethics* 347 (1986). The lawyer must examine the individual client's ability to give consent voluntarily and free from overriding influence of another person. *Id.* Vulnerability of the client must be taken into account.

To circumvent application of the Code of Professional Responsibility, respondent alleges that he fully advised Mr. Strauss and Ms. Lynn regarding any possible conflict of interest and that he was satisfied that they understood the explanation and consented to his representation in spite of the conflict of interest. Respondent additionally claims that the transaction between Mr. Strauss and Ms. Lynn was of no harm to either of them. He further claims that it is common practice for public figures and others to avoid publicity by filing lawsuits in counties where the persons are not known and it is unlikely that the media would discover the litigation.

Respondent's protestations seem to urge a defense that the conflict of interest was

"more technical than actual." *See Acorn Printing Co. v. Brown*, 385 S.W.2d 812, 817 (Mo.App.1964). The defense is highly questionable at best. According to respondent, his "disclosure" to Mr. Strauss consisted of his advising Mr. Strauss that a judgment would come out of Mr. Strauss's inheritance. Respondent did not disclose that all assets and income presently owned or eventually acquired by Mr. Strauss could be subject to attachment through the judgment until the judgment was satisfied. Respondent also failed to advise Mr. Strauss that the judgment would remain in effect regardless of the state of the parties' relationship.

Even assuming, *arguendo*, full disclosure, respondent had knowledge of facts that should have caused him to refuse dual representation. Early in the representation of Mr. Strauss, respondent became aware of the following facts: Mr. Strauss was "obsessed" with Debra Lynn; Mr. Strauss had lost employment as a result of his giving away merchandise without charge to Debra Lynn; Mr. Strauss misappropriated funds from an organization he was serving as an officer; and he had been under the care of psychiatrists. Respondent should reasonably have known that Mr. Strauss's judgment, at least on the subjects of Debra Lynn and money, was impaired and that Mr. Strauss's capacity to give knowing consent to any transaction involving Debra Lynn and funds or assets to which Mr. Strauss had access was in question. The Master found, and this Court also finds, that it should have been apparent to respondent that there was a serious question as to whether Stanley Strauss was capable of consenting to respondent's representation of Ms. Lynn and Mr. Strauss. Under such circumstances, the respondent should have refused to represent Debra Lynn in litigation against Stanley Strauss. Respondent violated *DR 5–105(A)*, *DR 5–105(B)* and *DR 7–104(A)(2)*.

Further, respondent's use of the court and legal process in Franklin County to facilitate the litigation between Debra Lynn and Stanley Strauss constitutes violations of *DR 1–102(A)(5)* and *(6)*.

In view of the Court's disposition of the Cowell matter, *infra*, it is unnecessary to consider the appropriate discipline relative to the Strauss matter.

### THE COWELL MATTER

According to *Rule 1.15(a)*, a lawyer is required to hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. The lawyer is required to maintain complete records of such account funds and other property. *Rule 1.15(b)* provides that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Unless otherwise provided by law or by agreement with the client, the lawyer is required promptly to deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, the lawyer is required promptly to render a full accounting regarding such property. *Rule 1.15(c)* provides that when, in the course of representation, a lawyer is in possession of property in which both the lawyer and another person claim an interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests.

The evidence supports a finding that respondent violated *Rules 1.15(a)*, *(b)* and *(c)*. Respondent represented Elvira Cowell in connection with her claims against Christian Hospital and others arising from surgery performed on Mrs. Cowell. In 1988, a settlement was reached between Mrs. Cowell and the hospital, pursuant to which a check in the amount of $4,500 made payable to Elvira Cowell and respondent was received by respondent during the latter part of December, 1988, or the early part of January, 1989. After some delay, Mrs. Cowell authorized respondent to endorse the settlement check so that it could be deposited without her having to travel to respondent's office. On February 9, 1989, the settlement check, deposited in respondent's business account

at respondent's direction, was specifically marked by respondent with the following notation: "Deposit in general account, 2/7."

Respondent admits that the settlement check was never deposited in respondent's escrow account. The $4,500 settlement check deposited in respondent's business account on February 9, 1989, was used by respondent for business related to his law practice. On nineteen separate occasions between February 9, 1989, and July 25, 1989, the balance in the business account dropped below $3,000, the amount due Mrs. Cowell.

On July 25, 1989, after receiving notice of a complaint filed by Mrs. Cowell relative to respondent's failure to continue to prosecute her claims, respondent deposited $3,000 into an escrow account from which he then wrote a check to the client in the amount of $3,000. The $3,000 deposit into the escrow account on July 25 was not by transfer from a payroll account, which respondent also maintained, nor did it come from the business account. The $3,000 check finally written to the client came from the monies paid in cash by another client.

In testimony to the Bar Committee, respondent said he made a mistake. Before the Master, respondent contended that the delay in depositing the check was somehow related to his inability to contact his client in order to have the check endorsed, and that the delay in sending the $3,000 to the client resulted simply from respondent's being too busy to notice. The record reflects, however, that when respondent deposited into the business account the $4,500 check, he was not too busy to withdraw his $1,500 fee. As to the discrepancy in testimony, respondent attempted to explain at the hearing before the Master that he was not fully prepared to testify before the Bar Committee because he was before the Bar Committee on a number of other complaints as well. The Master found respondent's explanations not worthy of belief, as does this Court.

When an attorney deposits the client's funds into an account used by the attorney for his own purposes, any disbursement from the account for purposes other than those of the client's interests has all the characteristics of misappropriation, particularly when the disbursement reduces the balance of the account to an amount less than the amount of the funds being held by the attorney for the client. Misappropriation of a client's funds, entrusted to an attorney's care, is always grounds for disbarment. *In re Mentrup*, 665 S.W.2d 324, 325 (Mo. banc 1984). Restitution of converted funds is not a defense. *Id.* Respondent's failure to preserve the client's funds undiminished in an escrow account constitutes a most serious violation of the disciplinary rules in an area where those rules properly demand procedures that not only guarantee that the client's funds will not be misappropriated but also enable the attorney readily to demonstrate that no misappropriation has occurred.

In defense, respondent makes much of the fact that he exercised poor office practices and maintained a very heavy caseload, as well as the fact that the client did not affirmatively demand payment. These facts do not serve to mitigate when it is clear that respondent himself directed that the client's monies be deposited into respondent's business account, that respondent then withdrew from that account his own fee, and that on nineteen separate occasions between deposit of the check into the business account and payment to the client of the $3,000 owed to her, the balance in the business account dropped below $3,000.

This Court finds that the misconduct of respondent was willful, deliberate, inexcusable and a violation of *Rule 1.15(a), (b)* and *(c)*. The case is similar to *Matter of Williams*, 711 S.W.2d 518 (Mo. banc 1986). Williams deposited a settlement award into his trust account and failed timely to pay the client. Respondent used his business operating account for his own purposes and the balance was not always adequate to cover outstanding obligations. *Id.* at 519–20. The case also comes within the holdings of *In re Mendell*, 693 S.W.2d 76, 78 (Mo. banc 1985); *In re Lechner*, 715

S.W.2d 257, 259 (Mo. banc 1986); *In re Staab*, 785 S.W.2d 551, 554–55 (Mo. banc 1990); and *In re Fenlon,* 775 S.W.2d 134, 142 (Mo. banc 1989).

Disbarment is the ultimate sanction and should be reserved for a clear case. *In re Fenlon,* 775 S.W.2d at 142. The case is clear and no sanction less than disbarment is warranted.

Respondent ordered disbarred.

All concur.