Isabelle v. Nissan Motor Accept. Corp CV-96-490-JD  05/28/98

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Stephen Isabelle, et al.

     v.                             Civil No. 96-490-JD

Nissan Motor Acceptance Corp.


                          O R D E R


     The plaintiff, Stephen Isabelle, brought this product

liability action alleging negligence and strict liability for an

alleged design defect against the defendant, Nissan Motor

Acceptance Corporation ("Nissan").  In addition, plaintiff Holly

Ann Isabelle asserts a loss of consortium claim.  Before the

court is the defendant's motion for summary judgment (document

no. 12).[1]


                         Background[2]

     On August 25, 1993, the plaintiff was working as a used car

salesman for his employer, Auto City of Manchester, when he drove

a 1985 King Cab Nissan pickup truck across a car lot for a

_____

     [1]Because Stephen Isabelle suffered the alleged injury and
Holly Ann Isabelle's claim is dependent upon Stephen Isabelle's
claim, for the purpose of this opinion, Stephen Isabelle will be
referred to as the plaintiff.

     [2]The facts related herein are not in dispute or are alleged
by the plaintiff.

customer.  He proceeded at a low speed, approximately ten miles an hour.  As he stepped on the brake, the seat slid forward freely, pushing the plaintiff forward as well.  As a result, his foot pressed hard on the brake, stopping the truck abruptly.  This caused him to be thrown forward and backward.  He hit his head on a sun visor and suffered lacerations, bruising, and severe injuries to his back, head, neck, and arms, as well as other injuries.  After the incident the plaintiff examined the seat.  He found that the seat adjuster lever, which locked and released the seat on its track, was caught on a tool pack stored beneath the seat.  The plaintiff asserts that the tool pack prevented the seat from locking into place and allowed the seat to slide forward and backward freely.

The plaintiff does not know the present location or the present owner of the vehicle, and has not seen the vehicle since the date of the incident.  The plaintiff's witnesses, including his expert witness, have not examined the vehicle or any of its component parts.  At the time of the incident the vehicle was eight years old with 144,973 miles on its odometer, its exterior was heavily rusted, its interior was filthy, and the seats were in poor condition.  The plaintiff does not know whether, as of the time of the incident, the strap that held the tool pack in place, the tool pack itself, the seat adjuster lever, or the seat

2

track, were original parts or in the same or similar condition as when the truck was manufactured and originally sold, or, with the exception of the tool pack, even if they were manufactured or sold by the vehicle manufacturer or its distributor. Moreover, in February 1990, the truck had had an accident on Interstate 93, suffered extensive damage, and was declared "totaled" for insurance purposes. The plaintiff does not know whether the seat track, the seat adjuster lever, or any of the component parts for moving the seat were damaged in the accident or otherwise.

The plaintiffs brought this action in New Hampshire Superior Court on August 21, 1996. Count one of the plaintiff's action sounds in strict products liability. The plaintiff asserts that the design of the truck was defective in that a tire iron and the tool pack were intended to be stored under the seat in such a way that they could catch the seat adjuster lever and hold it in a disengaged position. This in turn prevented the lever from locking the seat into position and allowed the seat to slide freely on its track. Count two sounds in negligence. The plaintiff asserts that the defendant allegedly failed in its duty to design and manufacture the vehicle: (1) in a safe and workmanlike manner; (2) in accordance with the latest technology available; and (3) in accordance with the industry standards at the time of its sale. Moreover, the defendant failed to

3

adequately warn the plaintiff of the dangers of using the product.  The resulting defective design prevented the seat from locking into place, allowed the seat to freely slide forward, and thereby caused the plaintiff's injuries.  In count three, Holly Ann Isabelle asserts a loss of consortium claim against the defendant.

On September 26, 1996, the defendant filed a notice of removal to the United States District Court for the District of New Hampshire.[3]  On October 12, 1997, the defendant moved for summary judgment on two related grounds.  First, the defendant argues that New Hampshire strict products liability law requires the plaintiff to prove that the product had not undergone substantial change in its condition as of the time of the incident.  The defendant contends that the plaintiff cannot carry his burden of proof on this element.  Second, the defendant argues that the plaintiff cannot carry his burden of proof that the incident was caused by a design defect.

## Discussion

The role of summary judgment is "to pierce the boilerplate

---

[3]This court's subject matter jurisdiction is predicated upon the complete diversity of the parties and an amount in controversy in excess of $50,000.  See 28 U.S.C.A. § 1332 (West 1993 & Supp. 1998).

4

of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing

5

Fed. R. Civ. P. 56(e)).  If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial[,]" Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment.  Celotex, 477 U.S. at 322.

A.    Strict Liability

The plaintiff argues that in a design defect claim under New Hampshire strict products liability law, the condition of the truck at the time it reached the plaintiff, and of the seat and tool pack assembly in particular, is not an element of his cause of action.  He asserts that the design defect in this case is the location of the tool pack, and because he has evidence that this was unchanged, he does not bear the burden of proof regarding the condition of the seat, its component parts, or the tool pack assemblage.  The plaintiff asserts that the condition of the vehicle would instead be an element of Nissan's defense alleging an intervening or superseding cause.

In Buttrick v. Lessard, 110 N.H. 36, 260 A.2d 111 (1969), the New Hampshire Supreme Court adopted the doctrine of strict products liability as defined in the Restatement (Second) of Torts § 402-A (1965).  See, e.g. Chellman v. SAAB-Scania AB, 138

6

N.H. 73, 77, 637 A.2d 148, 150 (1993) ("We adopted the doctrine of strict products liability as expressed in the Restatement (Second) of Torts § 402-A (1965) in Buttrick v. Lessard, supra.") Section 402-A of the Restatement provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of the product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402-A (1965). In applying the doctrine of strict products liability to design defect cases, the New Hampshire Supreme Court identified several elements of a plaintiff's cause of action that the plaintiff must establish to prevail in his claim: (1) the design of the product created a defective condition unreasonably dangerous to the user; (2) the condition existed when the product was sold by a seller in the business of selling such products; (3) the use of the product was

7

reasonably foreseeable by the manufacturer; and (4) the condition caused injury to the user or the user's property.  See Chellman, 138 N.H. at 77, 637 A.2d at 150; (citing Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 807, 809, 395 A.2d 843, 846-47 (1978)).

The plaintiff contends that because the factors identified above do not explicitly require him to prove that the product reached him without substantial change in its condition, it is not an element of his cause of action.  The New Hampshire Supreme Court has not specifically addressed this point of New Hampshire law.  Therefore, the court must determine what the New Hampshire Supreme Court would decide if confronted with the situation.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

In Thibault, the New Hampshire Supreme Court established the legal paradigm for a design defect case under New Hampshire law. See Chellman, 138 N.H. at 77, 637 A.2d at 150 ("In [Thibault] we explained the design defect theory of strict products liability . . . ."). Although Thibault is frequently cited as establishing the four elements indicated above, the Thibault court did not reduce the design defect cause of action to those elements. Instead, the court discussed public policy, the elements of a design defect claim, and possible defenses to such a claim with varying degrees of specificity.  See Thibault, 118 N.H. at 806-

8

14, 395 A.2d at 845-850.  Its discussion of causation, in particular, was limited.  See id., 118 N.H. at 809, 395 A.2d at 847 ("The plaintiff in a design defect case must also prove causation and forseeability.  He must show that the unreasonably dangerous condition existed when the product was purchased . . . and that the dangerous condition caused the injury.") (citations omitted).

The court notes that these comments regarding causation did not explicitly recite Restatement section 402-A(1)(b), proof of the condition at the time it reached the user.  However, a close reading of the Thibault holding compels the conclusion that section 402-A(1)(b) was indeed intended to be a necessary element of the plaintiff's cause of action under New Hampshire law.  In its holding, the New Hampshire Supreme Court explicitly directed trial courts to apply the elements of a design defect case as follows:

> Accordingly, we hold that the trial court should not read RSA 507:7-a (Supp. 1977) in a jury charge on the strict liability count . . . .  The trial court should read or paraphrase Restatement (Second) of Torts § 402-A(1) and (2) to the jury; the jury should then usually be asked by special verdict if plaintiff's proof met the requirements of the Restatement.  If plaintiff's proof is sufficient, the jury must [then consider defenses].

Thibault, 118 N.H. at 813, 395 A.2d at 850.  As noted above, section 402-A(1), paragraph (b), provides that the plaintiff must

9

prove the product "does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402-A(1)(b)(1965).

The Thibault decision was only reduced to the four elements cited by the plaintiff in cases that did not address the specific issue at hand here. See, e.g., Leblanc v. American Honda Motor Co., 141 N.H. 579, 585, 688 A.2d 556, 561-62 (1997); Chellman, 138 N.H. at 77, 637 A.2d at 150; Reid v. Spadone Mach. Co., 119 N.H. 457, 463, 404 A.2d 1094, 1097 (1979). Nothing in those decisions indicate an intent to deviate from the Thibault holding, nor to repudiate the disputed element of the Restatement. Indeed, they frequently cite Thibault and the Restatement as authority for the four elements. See, e.g., Chellman, 138 N.H. at 77, 637 A.2d at 150; Reid v. Spadone Mach. Co., 119 N.H. at 463, 404 A.2d at 1097.

This court does not find the plaintiff's argument persuasive that later New Hampshire Supreme Court cases abandoned or supplanted the Restatement factors and reduced Thibault to the four elements defined above, given: (1) the New Hampshire Supreme Court's explicit holding that Restatement sections 402-A(1) and (2) should be read or paraphrased to the jury, and that the jury must find the plaintiff has satisfied the requirements therein; (2) the New Hampshire Supreme Court's subsequent

10

reliance on <u>Thibault</u> and failure to contradict or overrule <u>Thibault</u> or repudiate its reliance on the <u>Restatement</u> in this regard; and (3) the fact that the issue was not before the New Hampshire Supreme Court in those actions. <u>See</u> <u>Raymond v. Raymond Corp.</u>, 938 F.2d 1518, 1520 (1st Cir. 1991) (quoting <u>Restatement (Second) of Torts</u> § 402-A in its entirety for New Hampshire products liability law). The court finds that New Hampshire law requires the plaintiff to prove: (1) the design created a defective condition unreasonably dangerous to the user; (2) the condition existed when the product was sold by a seller in the business of selling such products; (3) the product was expected to and does reach the consumer without substantial change in the condition in which it was sold; (4) the use of the product was reasonably foreseeable by the manufacturer; and (5) the condition caused injury to the user or the user's property.[4]

---

[4]The plaintiff is correct that the defendant can raise a defense alleging an alteration of the product as an intervening or supervening cause. However, the availability of this defense does not affect the plaintiff's burden of proof that the product was without substantial change. Simply because the defendant can establish a defense by proving or disproving a particular issue does not remove the plaintiff's burden of proving a related issue. This is similar to the plaintiff's burden regarding the use of the product. While the plaintiff must prove that "the purpose and manner of his use of the product was foreseeable," <u>Thibault</u>, 118 N.H. at 809, 395 A.2d at 847, the defendant has available to it the defense of the plaintiff's "product misuse or abnormal use," <u>Reid</u>, 119 N.H. at 464, 119 A.2d at 1098 (1979).

Other states which adhere to the Restatement's formulation of strict products liability also require plaintiffs in design defect cases to prove that a product reached them without substantial change in its condition. See, e.g., Phelps v. Sherwood Med. Indus., 836 F.2d 296, 304 (7th Cir. 1987) ("Under Indiana law, Phelps could prevail under strict products liability theory only if he could demonstrate that the allegedly defective product reached him 'without substantial alteration in the condition in which it is sold . . . .'") (citing Ind. Code § 33-1-1.5-3 (1983 Supp.) which is modeled after Restatement (Second) of Torts § 402-A (1965); Humpreys v. General Motors Corp., 839 F. Supp. 822, 828 n.6 (N.D. Fla. 1993) (rejecting contention that condition was not element of plaintiff's claim and stating "whether the [car] reached Plaintiffs without substantial alteration" was issue in case and "a necessary element of Plaintiff's cause of action"); Waggoner v. Mercedes Benz of N. Am., 879 S.W.2d 692, 695-96 (Mo. 1994) (summary judgment upheld in design defect case for failure to prove condition of product pursuant to Missouri law, which is modeled on Restatement (Second) of Torts as adopted in Keener v. Dayton Elec. Mfg. Co., 445 S.W.2d 362 (Mo. 1969)); Jasinski v. Ford Motor Co., 824 S.W.2d 454, 455 (Mo. 1992) (summary judgment upheld for failure to prove condition element under Missouri law); see also Lindsay

12

v. McDonnell Douglas Aircraft Corp., 460 F.2d 631 (8th Cir. 1972) (adopting Restatement expression of strict liability for maritime law, citing similar cases, and stating in its review of elements of claim "the record shows that the aircraft was substantially in the same condition at the time of the crash as when it was delivered by McDonnell to the Navy."). The plaintiff has provided no authority, and the court is unaware of any authority, to support the proposition that a plaintiff in a design defect case need not prove the condition of the product at the time it reached him under the strict products liability doctrine formulated by the Restatement.

In this case, the plaintiff argues that the location of the tool pack was the defective "condition." He asserts that because there is evidence that the tool pack was in the intended location, he has satisfied his burden of proof. However, the plaintiff's theory of the design defect, that the tool pack's location caused it to catch the seat adjuster lever and hold it unlocked, clearly contemplates more than the mere location of the tool pack. At a minimum, the "condition" incorporates and requires consideration of the seat adjuster lever, and most likely, it would require consideration of other component parts as well.

It is undisputed that the plaintiff does not know whether,

13

at the time of the incident, the seat adjuster lever was the original lever, whether it was one that was manufactured and sold by the manufacturer, or whether it was damaged prior to the incident. Indeed, the plaintiff has acknowledged that he does not even know if the strap that held the tool pack, the tool pack, the seat adjuster lever, or the seat track were original parts or in the same or similar condition as when the truck was manufactured and sold. Meanwhile, the truck was eight years old, it was filthy and rusted, it's odometer read 144,973 miles, and it had already suffered extensive damage from a prior serious accident and was declared "totaled" for insurance purposes. The plaintiff cannot satisfy his burden of proving that the product reached "the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402-A(1)(b) (1965).

The court therefore grants the defendant's motion for summary judgment on the plaintiff's strict liability claim.

B.   Negligence

The defendant also moves to dismiss count two of the plaintiff's claim which asserts liability under a negligence theory. To establish a cause of action for negligence, the plaintiff must prove:

14

(1) A legal duty of the defendant to the plaintiff in these circumstances;

(2) The defendant's breach of that duty;

(3) That the breach of that duty was a proximate cause of injuries sustained by the plaintiff; and

(4) The plaintiff suffered some king of damage as a result of the breach.

See Humphreys, 839 F. Supp. at 829. The plaintiff has identified a valid legal duty owed him by the defendant. See Reid, 119 N.H. at 465, 404 A.2d at 1099 ("In New Hampshire, the manufacturer is under a general 'duty to design his product reasonably safely for the uses which he can forsee.'") (quoting Thibault, 118 N.H. at 809, 395 A.2d at 847). The plaintiff has adduced evidence from an expert witness that the location of the tool pack and the seat's component parts constituted a defective design. The expert has stated that this defect prevented the seat from locking into position, and that this in turn caused the plaintiff's injuries. The plaintiff has also adduced evidence of the damages he suffered as a result of the defect. The plaintiff has therefore provided evidence in support of each element of his claim of negligence. Contrary to the defendant's argument, the plaintiff need not disprove all other possible causes of the

incident.[5]   The defendant's motion to dismiss count two is therefore denied.[6]


                              Conclusion

     The court grants the defendant's motion for summary judgment as to count one, denies it as to count two, and grants it as to count three to the extent that it incorporates count one by reference (document no. 12).

     SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    District Judge

May 28, 1998

cc:   William J. Thompson, Esquire
      Brian C. Shaughnessy, Esquire

---

[5]The court notes that the defendant may have been prejudiced by its inability to examine the truck in question, and that this may raise issues of spoliation.  See Trull v. Volkswagen of America, Inc., No. 94-15-JD (D.N.H. filed Aug. 11, 1997); Mayes v. Black & Decker (U.S.), Inc., 931 F. Supp. 80 (D.N.H. 1996); Headley v. Chrysler Motor Corp., 141 F.R.D. 362 (D. Mass. 1991).

[6]Because the plaintiff's negligence claim survives, so too does Holly Ann Isabelle's claim for loss of consortium asserted in count three.

16