260 S.W.2d 504 (1953)
LEIDY
v.
TALIAFERRO.
No. 43320.
Supreme Court of Missouri, Division No. 2.
July 13, 1953.
Rehearing Denied September 14, 1953.
Lewis F. Randolph, St. Joseph, Abe Goldman, St. Joseph, for appellant.
Brown, Douglas & Brown, R. A. Brown, Jr., St. Joseph, for respondent.
BARRETT, Commissioner.
On Tuesday, the 2nd day of August 1949, Thomas A. Leidy, Senior, and Thomas A. Leidy, Junior, were returning to St. Joseph from Oklahoma City in a 1949 Ford pickup truck. Approximately eight miles north of Nevada on U. S. Highway 71, Thomas A. Leidy, Senior, to avoid an oncoming truck, drove off the pavement and lost control of the pickup and it turned end over end. The Leidys claimed that as the vehicles passed the large truck struck the left rear end of the pickup. To recover damages for his resulting personal injuries Thomas A. Leidy, Junior, instituted *505 this action against Earl A. and Robert W. Overby, the owners of the large truck, and against J. R. Taliaferro upon the allegation that his father, who negligently drove the pickup, was "the agent, servant and employee" of Taliaferro. At the close of the plaintiff's evidence the trial court directed a verdict in favor of Taliaferro upon the theory that Thomas Leidy, Senior, was not Taliaferro's agent or employee. The plaintiff dismissed his action as to the Overbys and upon the trial court's overruling his motion for a new trial as to Taliaferro perfected his appeal to this court. Thus, the sole question for decision is whether there was probative evidence from which a jury could reasonably find that Thomas A. Leidy, Senior, was the agent or employee of Mr. Taliaferro on the return trip from Oklahoma City.
The pickup truck belonged to Modern Motors, Incorporated, the authorized Ford dealer in St. Joseph. Mr. Taliaferro is the president and majority stockholder of Modern Motors and in a deposition said, since he is the president and majority stockholder, that the corporation authorizes him to use the corporation's employees in his personal business. Thomas A. Leidy, Senior, was regularly employed by Modern Motors as a maintenance man. It is Mr. Taliaferro's theory that both Leidy, Senior, and Leidy, Junior, were employees of Modern Motors and that they were in the course of their employment on the occasion of the accident and that any claims either of them may have had for injuries were subject to the jurisdiction of the Industrial Commission. Both of the Leidys testified, however, that Thomas Leidy, Junior, was not employed by Modern Motors in 1949 and had not been for over a year and a half. But, as counsel for Mr. Taliaferro stated in the trial court, this action by Thomas Leidy, Junior, is against Mr. Taliaferro personally and it is immaterial that he may have been an employee of Modern Motors if his father was in fact Mr. Taliaferro's personal agent or employee upon the occasion of his injuries. Thomas A. Leidy, Senior, received thirty-nine drafts from Modern Motors' compensation in surance carrier and finally made application for and received a "lump sum" settlement, the payments totaling $4000. So, as between Leidy, Senior, and his regular employer, Modern Motors, Mr. Leidy may have made an election of remedies, Neff v. Baiotto Coal Co., Mo.Sup., 234 S.W.2d 578, but Leidy, Junior, even if an employee of Modern Motors and receiving compensation, is not precluded from suing Mr. Taliaferro if in fact his father was Mr. Taliaferro's personal agent or employee. Schumacher v. Leslie, 350 Mo. 1238, 232 S.W.2d 913; V.A.M.S. § 287.150; Restatement, Agency, § 374.
The parties cite and rely upon workmen's compensation cases, but they are applicable only in so far as they deal generally with the law of principal and agent or master and servant and are helpful only by way of analogy. This is a common law action for negligence, and whether Leidy, Senior, was the personal agent or employee of Mr. Taliaferro on the trip from Oklahoma City to St. Joseph, so as to render Mr. Taliaferro liable for Leidy, Senior's negligence, O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085, 1088, is to be determined by the generally recognized and accepted common law rules governing the relationship of master and servant or principal and agent. 5 Am.Jur., § 374, p. 711. "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement, Agency, § 1. The parties may not have intended to create the legal relationship or to have subjected themselves to the liabilities which the law imposes as a result of it, nevertheless, the relationship exists "if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." Restatement, Agency, § 15. Once the relationship is fixed "a master is subject to liability for injuries caused by the tortious conduct of servants within the scope of their employment." Restatement, Agency, §§ 219, 243. In this connection it may be noted that "a person may be the servant of two masters" *506 (Restatement, Agency, § 226), or he may become the lent servant of another (Restatement, Agency § 227), or he may act with a mixed or double purpose for himself and another. Foster v. Campbell, 355 Mo. 349, 196 S.W.2d 147; Restatement, Agency, § 236.
With these fundamentals in mind the circumstances of the trip from St. Joseph to Oklahoma City and return were these: Mr. Taliaferro's mother died in Oklahoma City and Leidy, Senior, said that on Saturday, July 30th, 1949, "Mr. Taliaferro wanted me to go down and haul some goods back that his mother left when she died." He was to go to Mrs. Taliaferro's residence in Oklahoma City, load the goods on the pickup truck and deliver them to Mr. Taliaferro's residence in St. Joseph, 1911 North 22nd Street. He was to start on the trip the following day, Sunday, which was not a regular work day at Modern Motors. Mr. Taliaferro told him that he could take his wife along but Mrs. Leidy could not go and "I said, `How about the boy? Can he go along?' And he said, `Yes, he will be company for you to go along.'" So Leidy, Senior, asked his son to accompany him on the trip. There was no arrangement for Leidy, Junior, to receive any pay and it does not appear that he was to perform any duties on the trip, and there was no specific arrangement for Leidy, Senior's compensation. Mr. Leidy said that before he left on the trip Mr. Taliaferro gave him fifty dollars cash from his pocket and before he left Oklahoma City Mr. Taliaferro gave him another twenty-five dollars. Mr. Taliaferro claims that Modern Motors advanced both men expense money for the trip. Leidy, Senior, and his son left St. Joseph about 4 o'clock on Sunday morning in the pickup truck and arrived in Oklahoma City the following morning about ten o'clock. When they arrived at Mrs. Taliaferro's residence in Oklahoma City Mr. Taliaferro was there to meet them. They loaded the truck with "household goodsbooks, dishes, spinning wheel, lawn mower, scythe, and different things like that" and left about 3 o'clock on the return trip to St. Joseph and had gotten as far as Nevada when Mr. Leidy lost control of the truck. In his deposition, Mr. Taliaferro said, of the pickup's cargo, "The corporation had no interest; it wasn't merchandise owned by the corporation.
"Q. Or merchandise in which they dealt, handled or sold? A. Correct.
"Q. Did the corporation have any interest that you know of? A. Not as a corporation.
"Q. But you, as President of the corporation, had an interest in getting your mother's personal effects? A. My personal effects.
"Q. What was he employed to dowhat specific work? A. As I stated, to drive this truck to Oklahoma City, load the cargo, return to St. Joseph and assist in unloading.
"Q. That was for you and not for the corporation? A. True as I think I have told you.
"Q. You gave Mr. Leidy, Sr. permission to drive this particular truck? A. I instructed him to drive it. * * *
"Q. What was either of these men doing for Modern Motors, Inc. on this trip to Oklahoma City ? A. Acting on instructions of the President of the corporation.
"Q. On matters purely personal to the President, yourself? A. The merchandise being transported was purely personal property of mine.
"Q. And it had no connection at all with the business of Modern Motors, Inc.? * * * A. It had no connection with the business."
The Ford pickup belonged to the Modern Motors corporation and it had the words "Modern Motors" painted on the door but as Mr. Taliaferro conceded, there is no evidence that Leidy, Senior, was on any errand or business connected with Modern Motors. Hillman v. Service Packing Co., 67 Ohio App. 254, 36 N.E.2d 433, 434. The requisite manifestation of consent to create the relationship may be "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the *507 principal's account." Restatement, Agency, § 26. Mr. Taliaferro requested Leidy, Senior, to make the trip and Leidy's employment by Modern Motors did not bring him on the journey or expose him or his son to its hazards. The purpose of the trip was personal to Mr. Taliaferro and it was for his benefit, not that of the corporation, that the truck was driven to Oklahoma City. Joyner v. Kimmell, Mo. App., 217 S.W.2d 724. The truck belonged to Modern Motors, but, as indicated, there is no evidence that Mr. Leidy was on any mission or business connected with the company or that the pickup was being used for any purposes connected with the company so as to create the relationship of principal and agent as between Modern Motors and Leidy, Senior. Hayden v. Yelton, Mo.App., 237 S.W.2d 249. It plainly appears, without dispute, that Mr. Taliaferro requested Leidy, Senior's services, O'Brien v. Rindskopf, 334 Mo. loc. cit. 1242, 70 S.W.2d loc. cit. 1089, that he had the right to control his course of conduct on the trip and in fact exercised that right to its utmost. Restatement, Agency, § 220; Jacobson v. Beffa, Mo. App., 282 S.W. 161. While compensation to the agent is not essential to the creation or existence of the relationship (Restatement, Agency, §§ 16, 225) the fact that Leidy, Senior, was paid by Mr. Taliaferro personally, as the jury could have found, is a circumstance indicative of the relationship. Gorman v. A. R. Jackson Kansas City Showcase Works Co., Mo. App., 19 S.W.2d 559. By every possible test or standard the evidence adduced by the plaintiff, Leidy, Junior, plainly supports the inference that Leidy, Senior, was the personal agent of Mr. Taliaferro on the trip to Oklahoma City and return, and by reason of that fact is liable for Mr. Leidy's negligence in operating the pickup truck. O'Brien v. Rindskopf, supra; Joyner v. Kimmell, supra; Foster v. Campbell, supra; Boroughf v. Schmidt, Mo.App., 259 S.W. 881. Since the inference of agency is supported by probative evidence the question was for the jury and the trial court erroneously directed a verdict for the defendant, Taliaferro. Sweat v. Brozman, 239 Mo.App. 1048, 198 S.W.2d 531; O'Brien v. Rindskopf, supra. Accordingly the judgment is reversed and the cause remanded.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.