**WORLD RESOURCES, LTD.,**
**Plaintiff–Appellant,**

v.

**Thomas UTTERBACK, Respondent–**
**Respondent.**

**No. 70452.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 25, 1997.

Dowd & Dowd, P.C., Richard K. Dowd, St. Louis, for Appellant.

Stahlhuth, Rudder & Taylor, L.C., William R. Stahlhuth & Amy Hardin Surber, Eureka, for Respondent.

KAROHL, Judge.

Plaintiff, World Resources, Ltd. (WR), appeals after summary judgment in favor of defendant, Thomas Utterback, a businessman and attorney at law.

In its petition, WR alleged three causes of action: (1) breach of fiduciary duty; (2) constructive trust; and, (3) accounting. All three were predicated on WR's allegation,

> in April, 1993[WR] and [Utterback] entered into an agreement whereby [WR] was to receive and [Utterback] was to provide legal services to [WR]. The parties thereby entered into an attorney-client relationship whereby [WR] reposed in [Utterback] a special trust and confidence and [Utterback] thereby acquired the fiduciary duties of trust, confidence, loyalty and utmost good faith.

WR also alleged it gave Utterback information concerning its planned marketing services for Cuba Industrial Coatings, Inc. (CIC). It alleged Utterback subsequently entered into a business relationship with CIC to the exclusion of WR in breach of his fiduciary duties.

On January 24, 1996, Utterback filed a motion for summary judgment. He alleged, "[WR's] Petition is predicated upon the establishment of an attorney-client relationship between [WR] and [Utterback]. Without that relationship established, the petition fails to state a claim." He also alleged Missouri Incutech Foundation d.b.a. Missouri Enterprise (ME) contracted with WR and WR's activities with CIC were on behalf of ME, and not on its own behalf. For that reason, "the petition herein fails to state of [sic] cause of action by reason that [WR] is an improper party."

In support of the motion for summary judgment, Utterback filed two affidavits, his and one of Dennis Roedemeier, the president of ME. WR filed a response and a counter affidavit of Craig Palubiak, the president of

WR. Both parties also agreed, "pursuant to Rule 81.15 that the deposition of Dennis Roedemeier is true and accurate and shall be part of the Legal File in this appeal."

When considering appeals from summary judgments we will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* Summary judgment is proper upon proof of facts which negate any one of the elements of a cause of action or upon proof that evidence proving one element of the cause of action cannot be produced. *Id.* at 381. WR's claims are predicated on the fact that it and Utterback had a principal-agent/client-attorney relationship which was created when it gave him a proposed contract for review. There was no written or oral agreement. The affidavit in opposition to Utterback's motion for summary judgment does not mention the terms of the implied agreement to hire counsel.

■ A review of the facts in the record in the light most favorable to WR reveals a lack of evidence to support a finding of a principal-agent/client-attorney relationship. The relationship of principal and agent arises out of contract, expressed or implied. *Markland v. Travel Travel Southfield*, 810 S.W.2d 81, 83 (Mo.App.1991). It is an agreement whereby one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal. *Id.* An attorney-client relationship might be found to exist if there is evidence to support findings that the "client" sought and received legal advice and assistance and the "attorney" intended to undertake to give such advice and assistance on the "client's" behalf. *Donahue v. Shughart, Thomson & Kilroy*, 900 S.W.2d 624, 626 (Mo. banc 1995).

In April of 1993, Utterback was a practicing attorney and a business consultant. Utterback sometimes did legal work for ME and sometimes evaluated business deals for

ME on a non-legal basis. ME provides business assistance to small and medium sized companies. Its primary objective "is to act as a facilitator and to network with people and organizations." ME worked to bring together people with various expertise and "step back from that and let them work together...." ME subcontracted with WR to investigate the potential of marketing CIC's products to develop CIC into a major supplier of striping paints in the highway striping industry.

In April of 1993, Roedemeier, the president of ME, introduced Utterback to Charles Ruggeri, the president of CIC. Roedemeier suggested to Utterback that CIC offered a good business opportunity. Utterback had procured funding in the past for economic development efforts by ME. Roedemeier, with this thought in mind, attempted to interest Utterback in CIC. According to Roedemeier's affidavit, ME never retained Utterback as an attorney for any project related to CIC.

According to Palubiak's sworn affidavit, filed in opposition to the motion, Roedemeier introduced Utterback to Palubiak at an April 5, 1993, meeting. Roedemeier advised Palubiak that Utterback "was an attorney on retainer with [ME] and a member of the team and that [Palubiak] was to have the [Utterback] review contracts that [Palubiak] was entering into with possible distributors." On that date, Palubiak delivered a contract to Utterback "for his review so he could advise [Palubiak] as to whether the contract was a properly worded, legally binding document." It was Palubiak's "belief", "Utterback was acting as the attorney for WRs and [Palubiak] and was to be looking out for [Palubiak's] interests." The affidavit does not refer to any statements or response from Utterback.

After April 5, 1993, Palubiak had a difficult time reaching Utterback on the phone. Utterback never gave Palubiak or WR advice, legal or otherwise. Palubiak discovered that Utterback had directly contacted CIC, without WR's knowledge or permission, to obtain the right to market CIC's product. Utterback began marketing CIC's product himself

to the exclusion of WR. Eventually Utterback became a part owner of CIC.

In WR's sole point on appeal, it asserts the trial court erred in two legal conclusions when it granted Utterback's summary judgment motion. The trial court erred by holding: (1) an attorney-client relationship cannot arise from the behavior and the conduct of the parties; and, (2) an attorney-client relationship did not exist as a matter of law. It argues there is a genuine issue of material fact as to the existence of such a relationship.

The trial court did not expressly find an attorney-client relationship cannot arise from the behavior and conduct of the parties. It simply held:

> The motion of the defendant [Utterback] for summary judgment having been presented and the Court having been fully advised,

> The Court finds that the defendant [Utterback] is entitled to a summary judgment as a matter of law....

■■■ The relationship of attorney and client is a relation of agency, and its general contours are governed by the same rules. *Jarnagin v. Terry*, 807 S.W.2d 190, 193 (Mo. App.1991). The existence of an agency need not be shown by direct and positive evidence. It may be inferred from facts and circumstances. *Historic Hermann, Inc. v. Thuli*, 790 S.W.2d 931, 935 (Mo.App.1990). WR's first argument is sound. Agency may be proven by the conduct of the parties. However, an agency will not be created or inferred by or from conjecture or surmise. *Id.* WR would have the burden of proof to show that an agency, in fact existed. *Id.* The law does not indulge in a presumption of agency; if an agency is to be inferred it must be inferred from a natural and reasonable construction of the facts, and not from a forced, strained or distorted construction. *Id.*

WR presented no summary judgment facts in evidentiary form to support a finding that it received legal advice or assistance from Utterback, or that Utterback intended to provide such advice or assistance on WR's behalf. *See Donahue*, 900 S.W.2d at 626. Palubiak's affidavit does not assert the terms

of its employment of Utterback or that he agreed to serve WR as an attorney. The delivery of the proposed WR contract with a possible distributor was a response to the direction of Dennis Roedemeier of ME at a time when ME and WR were parties to a contract. The delivery of the proposed contract for review is insufficient, standing alone, to preserve a contested issue of fact that Utterback became WR's attorney. Acceptance of a copy of the contract for review, for the benefit of ME or WR or both, would not have supported, in the absence of further facts on the terms of an agreement to act as an attorney for WR, a claim for attorney's fees against WR.

The summary judgment facts at most could support a finding Utterback had on occasion performed legal services as attorney for ME. However he never represented ME, as an attorney, in its relationship with CIC. Roedemeier and Utterback's denial that Utterback ever represented ME in its dealings with CIC was unopposed. WR's facts support findings that both it and Utterback had business relationships with ME and ME wanted WR to have Utterback review its proposed contracts. But WR's facts would not support a finding it retained Utterback.

WR's delivery of the contract to Utterback for review coupled with a belief Utterback was acting as its attorney are insufficient to maintain a fact dispute on Utterback's intention to provide WR with legal advice and assistance on its behalf. Therefore, the trial court did not err in granting summary judgment.

We affirm.

RHODES RUSSELL, P.J. and SIMON, J., concur.