**MULTILIST SERVICE OF CAPE GIRARDEAU, MISSOURI, INC. et al., Plaintiffs/Appellants,**

v.

**Stephen WILSON et al., Defendants/Respondents.**

**No. ED 74880.**

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 11, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2000.

Application for Transfer Denied April 25, 2000.

---

Mark A. Helfers, Clayton, for appellant.

James F. Waltz, John L. Oliver, Cape Girardeau, for respondents.

MARY RHODES RUSSELL, Chief Judge.

Multilist Service of Cape Girardeau, Missouri, Inc. ("MLS"), through its statutory trustees, and MLS's individual members ("members") appeal the entry of two summary judgments in favor of Stephen Wilson ("Wilson") and his law firm Buerkle, Beeson & Ludwig ("law firm") (collectively "defendants") in MLS's and members' action against Wilson and law firm for legal malpractice. The trial court held that members had no attorney-client relationship with Wilson and law firm, and that MLS had no capacity to sue. We affirm the summary judgment entered on the finding of no attorney-client relationship. We reverse and remand, however, the entry of summary judgment on the finding that MLS lacked the capacity to sue and was incapable of sustaining damages.

*Facts*

MLS was a not-for-profit corporation established to facilitate real estate transactions in the Cape Girardeau area. MLS hired Wilson and law firm to represent it. In 1988, it sought advice from Wilson about the legality of denying, pursuant to

its by-laws, an application for membership. After consulting with Wilson, MLS denied the application.

· Thereafter, the United States Department of Justice ("DOJ") initiated an investigation into alleged antitrust violations committed by MLS. During this investigation, Wilson represented MLS. MLS and the majority of members entered into a consent judgment with the DOJ.

In April 1991, MLS voted to dissolve the corporation and adopted a plan of distribution for its assets. MLS transferred all of its assets to another not-for-profit corporation and executed Articles of Dissolution. The secretary of state in January 1992, before Wilson had filed the Articles of Dissolution, forfeited MLS's charter and administratively dissolved it for failure to file its annual report.

The applicants who had been denied membership sued MLS and members in March 1992 alleging antitrust violations. MLS employed another law firm to represent it for this suit. On March 17, 1992, Wilson finally filed the Articles of Dissolution with the secretary of state. The applicants' suit against MLS and members was settled in April 1993 for $156,666.68.

In February 1993, MLS's statutory trustees, on behalf of the corporation, and members sued Wilson and law firm for legal malpractice. In response, Wilson and law firm filed a motion for summary judgment alleging there was no attorney-client relationship between them and members. The trial court granted this motion. In July 1997, Wilson and law firm filed a second motion for summary judgment alleging that since MLS had been dissolved prior to MLS filing its lawsuit, it lacked capacity to sue and was incapable of sustaining damages. The trial court also granted this motion. This appeal followed.

### Standard of Review

Review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is designed to permit the trial court to enter judgment where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

A defending party may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of essential facts. *Id.* at 382. It is not the truth of the facts upon which the court focuses, but whether those facts are disputed. *Id.*

### First Motion for Summary Judgment

Members argue the trial court erred in granting defendants' first motion for summary judgment on January 3, 1996 on the basis there was no attorney-client relationship between members and defendants. Members maintain they submitted sufficient evidence to establish an attorney-client relationship between themselves and defendants. In the alternative, members argue they submitted sufficient evidence to establish that MLS employed Wilson specifically intending to benefit members, thereby establishing an attorney-client relationship.

Defendants respond the trial court did not err in granting their first motion for summary judgment because they established an attorney-client relationship existed with MLS only, not with members.

Defendants further state members failed to show a genuine dispute over this issue.

■ The first element of a legal malpractice claim may be satisfied by establishing as a matter of fact either that an attorney-client relationship existed between the plaintiff and defendant or that an attorney-client relationship existed in which the attorney performed services specifically intended by the client to benefit the plaintiffs. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628–29 (Mo. banc 1995).

■ The course of dealings between Wilson and MLS is consistent with an attorney-client relationship between Wilson and the corporation, not one between Wilson and members. Members do not dispute that MLS, as a corporation, hired Wilson to represent the corporation. Wilson's contact was primarily with the corporate officers. Although he may have had contact with individual members, this limited contact is insufficient to establish an attorney-client relationship. Furthermore, there is no dispute Wilson billed the corporation, not each individual member, for his services.

Members state in their affidavits they "understood" that law firm was employed to represent members along with MLS. This understanding came from Wilson attending various meetings, giving advice to specific members when asked, and from letters he wrote expressing his opinion on the legality of what MLS was doing.

■ Members' affidavits stating what they understood their relationship to the law firm was, however, are insufficient to establish a genuine issue of material fact on the attorney-client relationship issue, when the elements of the relationship do not exist.

■ The attorney-client relationship is a relation of agency, and its general contours are governed by the same rules. *World Resources, Ltd. v. Utterback*, 943 S.W.2d 269, 271 (Mo.App.1997). Agency may be proven by the conduct of the parties. *Id.* Agency, however, will not be created or inferred by or from conjecture or surmise. *Id.* If agency is to be inferred it must be inferred from a natural and reasonable construction of the facts, and not from a forced, strained or distorted construction. *Id.*

■ In the instant case, an attorney-client relationship between members and defendants cannot reasonably be inferred. Wilson's attendance at meetings and discussions with members about the antitrust matter are consistent with his duty to MLS, not members. In representing the corporation Wilson necessarily had to discuss legal matters with members, as a corporation is an artificial entity which must act through an agent. *Ritter v. BJC Barnes Jewish Christian Health Systems*, 987 S.W.2d 377, 384 (Mo.App.1999). However, merely because an attorney, representing another, discusses the subject matter of the transaction or agreement with a third party does not create an attorney-client relationship. *See* Mallen & Smith, *Legal Malpractice*, Section 8.3 (4 th ed.1996); *see also Id.* at Section 24.9. Members' "understanding" of the situation does not alter this conclusion. *See World Resources*, 943 S.W.2d at 271–72 (plaintiff's "belief" that defendant was acting as his attorney was insufficient to establish an attorney-client relationship).

Members' alternative argument that a relationship can be established in that MLS employed defendants specifically intending to benefit members is misplaced. According to the court in *Donahue*, MLS must intend that members be *the* beneficiaries of the retention of Wilson in order to satisfy the attorney-client relationship element. 900 S.W.2d at 627–28. In the instant case, however, members individually were not intended to be the beneficiaries of Wilson's retention. There is no dispute that MLS hired Wilson to benefit the corporation.

Finally, Rule 4–1.13 of Missouri's Rules of Professional Conduct provides that a

"lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." It would be inconsistent with this rule to hold that an attorney has a duty to individual members of the corporation. *See Rose v. Summers, Compton, Wells & Hamburg, P.C.*, 887 S.W.2d 683, 686 (Mo.App.1994). Furthermore, as pointed out by our court in *Rose*, conflicting interests between the corporation and its members would be inevitable. *Id.*

We hold members failed to demonstrate a genuine issue of material fact exists regarding the existence of an attorney-client relationship between members and defendants. Therefore, the trial court did not err in granting defendants' first motion for summary judgment.

*Second Motion for Summary Judgment*

The trial court granted a second summary judgment on July 16, 1998 in favor of defendants, holding MLS had no capacity to sue in that its dissolution occurred before it filed its legal malpractice suit. The trial court also held that the "vast majority" of MLS's alleged damages occurred after it was dissolved, and that MLS did not have the capacity to incur those damages due to its dissolution.

On appeal, MLS argues the trial court erred in granting the second motion for summary judgment in that (1) MLS submitted sufficient evidence it suffered some damages prior to dissolution; (2) the affidavit of its expert attorney created an issue of fact on causation and damages; (3) MLS submitted sufficient evidence to establish that its statutory trustees were empowered to collect the assets of MLS, and that the damages suffered as a result of defendants' negligence were one such asset; and (4) MLS submitted sufficient evidence to establish liability on the part of Wilson's partners in law firm.

In response, defendants reiterate the trial court's conclusions; namely, that because MLS dissolved prior to filing suit against defendants, MLS had no capacity to sue and failed to show it sustained any recoverable damages.

In order to determine the capacity issue, we must first decide whether MLS is a forfeited corporation that has been administratively dissolved, or a voluntarily dissolved corporation.

Defendants contend MLS is a voluntarily dissolved corporation, as it took all necessary steps to effect dissolution except for filing articles of dissolution with the secretary of state. Therefore, defendants maintain, MLS accomplished a "de facto" dissolution. We disagree.

■ Section 355.250.1 RSMo 1994[1] requires the not-for-profit corporation's articles of dissolution to be filed with the secretary of state in order to effect a voluntary dissolution. Section 355.250.2 further provides:

> [the secretary of state] shall return the certificate of dissolution with a duplicate original or copy of the articles of dissolution thereto affixed to the representative of the dissolved corporation. *Upon the issuance of the certificate of dissolution, the existence of the corporation shall cease.* (emphasis added)

By the terms of the statute, dissolution does not become final until the articles are filed with the secretary of state. *See Kurre v. American Indemnity Co.*, 223 Mo.App. 406, 17 S.W.2d 685, 690 (1929).

■ Defendants' reliance on "de facto" dissolution is misplaced. "De facto" dissolution means that dissolution has in circumstances and in fact taken place, as where a corporation by reason of insolvency or other reason, suspends all of its obligations and goes into liquidation without having technically availed itself of the statutory procedure provided for that purpose. *Hentschel v. Fidelity & Deposit Co. of Maryland*, 87 F.2d 833, 836 (8th Cir. 1937).

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

In the instant case, however, MLS *did* avail itself of all statutory procedures provided for voluntary dissolution by executing the Articles of Dissolution. All that remained to be done was the filing of the articles, which Wilson, MLS's attorney, failed to do until after the secretary of state had forfeited MLS's charter. Therefore, MLS did not voluntarily dissolve, the liquidation and transfer of its assets notwithstanding. *See United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823, 827 and n. 1 (W.D.Mo.1984) (Corporation treated as forfeited corporation, even though its assets were liquidated and proceeds distributed two years before Secretary of State forfeited its charter; corporation had never filed certificate of voluntary dissolution with Secretary of State); *see also United States v. Northeastern Pharm. & Chem. Co.,* 810 F.2d 726, 746–47 (8th Cir.1986) (Circuit court agreed with district court that corporation should be treated as forfeited, rather than dissolved). Under Missouri law, MLS forfeited its charter and was administratively dissolved on January 1, 1992.

Forfeiture of the corporate charter destroys the corporation's existence as a legal entity. *Ellison v. Valley View Dairy, Inc.,* 905 S.W.2d 93, 95 (Mo. App.1995). A corporation having no legal entity cannot be a party plaintiff or defendant at law or equity. *Mark Twain Elec., Inc. v. Yalem,* 825 S.W.2d 366, 368 (Mo. App.1992). Therefore, the statutory trustees of the corporation must bring suit in their own names on behalf of the forfeited corporation. *Id.;* section 355.507.1.

Section 355.507.1 provides in pertinent part:

The directors and officers in office when the forfeiture occurs shall be the trustees of the corporation, and have full authority to wind up its affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets as in this chapter provided. *The trustees as such shall have power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such.* The trustees shall be jointly and severally responsible to the creditors and members of the corporation to the extent of its property and effects that have come into their hands. (emphasis added)

The trial court was correct insofar as it held that MLS as an entity did not have the capacity to sue. In the instant case, however, MLS itself did not bring suit against Wilson and law firm. Rather, its statutory trustees sued defendants on MLS's behalf. Consequently, the proper parties were before the court.

Having determined that MLS's statutory trustees have the capacity to sue on MLS's behalf, we must next decide whether a legal malpractice action is proper under section 355.507.1.

By the provisions of the statute, the trustees are endowed with all functions necessary to protect the interests of the dissolved corporation. *Illinois Power & Light Corp. v. Hurley,* 49 F.2d 681, 685 (8th Cir.1931). "Having in mind the purpose of the statute, it would seem clear that ... a chose in action, whether based upon contract or sounding in tort, is personal property ..." *First Stop Book Shop v. Matthews Book Co., Inc.,* 476 F.Supp. 1054, 1055 (E.D.Mo.1979) (quoting *Illinois Power & Light,* 49 F.2d at 685), overruled on other grounds by *First Stop Book Shop v. Matthews Book Co., Inc.,* 634 F.2d 396 (8th Cir.1981).[2] Therefore, a legal malpractice suit by statutory trustees on behalf of a forfeited corporation is permitted

---

**2.** The statute at issue in *Illinois Power & Light* concerned the trustees of a voluntarily dissolved corporation. The one at issue in *First Stop Book Shop,* section 351.525 RSMo 1969, concerned statutory trustees of a forfeited Chapter 351 corporation. Both statutes, however, contain the same language as section 355.507.1 regarding the trustees' power to sue for and recover the debts and property due the corporation.

under section 355.507.1, as it is an act to recover property due the corporation.

■■■ Wilson gave the allegedly negligent advice to MLS when it was a corporation in good standing. MLS's actions based upon that advice exposed the corporation to liability to the DOJ as well as to the applicants who were denied membership. As there exists a genuine dispute of material fact that MLS suffered recoverable damages in the form of attorneys' fees or other monetary liability, summary judgment was improper. Under section 355.507.1, MLS can attempt to recover those amounts through a legal malpractice lawsuit.

In its brief, MLS argues the trial court erred in granting summary judgment as to Wilson's partners in the law firm, as Wilson's acts were within the scope of his authority and the partners are liable through agency principles. We find no holding from the trial court stating that the partners are not liable regardless of Wilson's liability. Rather, the trial court granted summary judgment in favor of the partners because it found Wilson not liable. On remand, MLS can pursue its suit against Wilson and law firm. *See* Section 358.130; *Reed v. Sale Memorial Hosp. and Clinic*, 698 S.W.2d 931, 939 (Mo.App. 1985).

The judgment of the trial court granting defendants' first motion for summary judgment is affirmed. The judgment granting defendants' second motion for summary judgment is reversed and remanded for further proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, J., and SHERRI B. SULLIVAN, J., concur.