**MID–CONTINENT CASUALTY COMPANY, Plaintiff/Appellant,**

v.

**DANIEL CLAMPETT POWELL & CUNNINGHAM, LLC, Defendant/Respondent.**

**No. SD 26697.**

Missouri Court of Appeals, Southern District, Division One.

May 22, 2006.

Motion for Rehearing and Transfer Denied June 22, 2006.

Application for Transfer Denied Aug. 22, 2006.

Vincent Francis O'Flaherty, Frederick H. Riesmeyer, II, Kansas City, for appellant.

Timothy M. Aylward, Brent Wright, Kansas City, for respondent.

## SHERRI B. SULLIVAN, J.

### Introduction

Mid–Continent Casualty Company (MCC) appeals from the summary judgment entered by the trial court in favor of Daniel Clampett Powell & Cunningham, LLC (Clampett) on MCC's petition for legal malpractice. We affirm.

### Factual and Procedural Background

On January 25, 1996, three employees of Matrix Service Company (Matrix) were seriously injured while welding an above-ground fuel storage tank on a project in Mount Vernon for Williams Pipeline Corporation (Williams). Tank Consultants, Inc. (TCI) provided contract consulting services for Williams on the Mount Vernon Project. The three employees brought suit against Williams and TCI in an action styled *White, et al. v. Williams Pipeline Corp., et al.* (the White litigation).

The insurance policy that provided coverage to TCI in the White litigation was issued by Mid–Continent Insurance Company (MCI).

MCC, MCI and Oklahoma Surety are separate corporations that are part of the "Mid–Continent Group." The Mid–Continent Group is not a business entity, but rather a word or trademark designating the informal conglomeration of these three separate corporations. MCC employees work as adjusters on behalf of MCI or Oklahoma Surety when claims arise under policies issued by MCI or Oklahoma Surety. MCC employees Harley Brown and Kirby Pancoast worked as adjusters on behalf of MCI in the White litigation.

MCI had a duty to defend TCI in the White litigation as TCI's insurer. On October 7, 1996, MCI assigned the defense of TCI to Clampett.

The contract between Williams and TCI for the Mount Vernon Project contained an indemnity clause in which TCI agrees to indemnify Williams for all claims brought against it, with certain exceptions not applicable here. As a result, Williams filed a cross-claim against TCI seeking indemnity in the White litigation. Williams eventually settled with the plaintiffs for $3,475,000.00. MCI refused to settle. Williams sought summary judgment on its indemnity claim against MCI. The trial court granted summary judgment in favor of Williams, finding that MCI was obligated to indemnify Williams. This judgment was affirmed by the Court of Appeals, Southern District.

TCI thereafter filed an action against MCI for breach of contract and breach of the covenant of good faith and fair dealing. The parties settled this litigation for approximately $7,000,000.00. The settlement agreement between MCI and TCI stated that TCI agreed to cooperate with MCI, its insurer, in connection with any action against Clampett.

We note that the settlement with TCI was paid entirely by MCC. MCI paid nothing to Williams to satisfy the judgment against TCI in the White litigation.

MCC thereafter filed suit against Clampett for legal malpractice, asserting that an attorney-client relationship existed between MCC and Clampett for the defense of TCI. MCC claimed Clampett was negligent in defending TCI, in failing to assert the inapplicability and/or unenforceability of the indemnity provision, and for filing a response to Williams' summary judgment motion that failed to comply with Rule 74.04.[1] MCC sought as damages the amount it paid to TCI to settle its claims against MCI.

---

1. All rule references are to Mo. R. Civ. P.2005, unless otherwise indicated.

MCI filed a motion to be added as a party plaintiff to this suit which the trial court denied. Clampett filed a motion for summary judgment, arguing that it had no attorney-client relationship with MCC. The trial court granted this motion. MCC appeals from this judgment.

### Standard of Review

Our review of the trial court's grant of summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). The propriety of summary judgment is purely an issue of law. *Id.* We need not defer to the trial court's order, as its judgment is founded on the record submitted and the law. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be used by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is proper only in those situations in which the movant can establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 377.

### Points on Appeal

In its first point, MCC contends that the trial court erred in granting summary judgment in favor of Clampett on Count I of its petition for negligence because two plausible, but contradictory accounts of essential facts as to the existence of an attorney-client relationship have been presented in this case.

### Discussion

■ MCC contends that the trial court believed Clampett's version of the facts and ignored MCC's version. MCC's alleged facts supporting the existence of an attorney-client relationship are as follows.

First, MCC claims that Clampett listed MCC as a client in the Martindale–Hubbell listings from 1996–2001, and Clampett worked on no matters other than the White litigation from 1996–2001 for MCC or any other member of the Mid–Continent Group. However, listing a client in Martindale–Hubbell does not create an attorney-client relationship, and the authority presented by MCC, *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 24 P.3d 593 (2001), does not support MCC's argument.

Second, MCC contends that it paid Clampett's fees for handling the White litigation. However, it is unclear from the record whether MCC or MCI paid Clampett's fees. Clampett attorney Pat Platter (Platter) testified that MCC paid the fees. However, documents in the record show that MCI assumed responsibility for the costs of Clampett's representation, which were compensated by Employers Reinsurance Corporation (ERC). Other documents refer to Mid–Continent Group, without specifying MCC or MCI.

■ In any event, the mere payment of fees, without more, is not proof of an agency relationship, *Leidy v. Taliaferro*, 260 S.W.2d 504, 507 (Mo.1953), much less an attorney-client relationship. The relation between a lawyer and his client is a delicate and exacting one, highly personal. *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 57 (Mo.1982). It involves much more than the payment of fees. MCC presented no facts to support a finding that it received legal advice or assistance from Clampett, or that Clampett intended to provide such advice or assistance on MCC's behalf. *World Resources, Ltd. v. Utterback*, 943 S.W.2d 269, 271 (Mo.App. E.D.1997).

■ Third, MCC asserts that Platter stated that MCC was Clampett's client and

that he reported to MCC. However, throughout Platter's testimony, references to Mid–Continent Group are made without clarifying whether MCI, MCC or the whole group was intended. In any event, merely because an attorney discusses the subject-matter of the litigation with a third party does not create an attorney-client relationship. *Multilist Serv. of Cape Girardeau Missouri, Inc. v. Wilson,* 14 S.W.3d 110, 114 (Mo.App. E.D.2000). Additionally, belief in an attorney-client relationship is insufficient to create such a relationship. *Id.*

Ultimately, the record shows that Platter and Clampett were hired to fulfill MCI's contractual duty to defend TCI in the White litigation. There is no evidence in the record that MCC had a duty to defend TCI, regardless of Platter's keeping MCC informed of events.

Fourth, MCC states that its employees who worked on the White litigation, specifically James Johnson (Johnson), claims attorney at MCC, believed that an attorney-client relationship existed between MCC and Clampett. Again, as previously noted, belief in an attorney-client relationship is insufficient to create such a relationship. *Multilist,* 14 S.W.3d at 114; *Utterback,* 943 S.W.2d at 272.

Fifth, MCC proposes that other Clampett internal records and written correspondence indicates that Clampett believed MCC was a client. Specifically, MCC notes that on October 17, 1996, Clampett prepared a "Client Agreement" form for the White litigation. In it, Clampett listed the client as "Mid–Continent Group." MCC contends that Clampett listed Mid–Continent Group as the client because the October 7, 1996 engagement letter from Harley Brown to Clampett was on Mid–Continent Group letterhead. The letterhead listed MCC, MCI and Oklahoma Surety. MCC maintains that since MCC was one of the three companies within the trade name Clampett listed as its client, it is plausible that Clampett intended MCC to be its client.

Mid–Continent Group is a trademark. Clampett's listing this trademark as its client pursuant to the engagement letter's letterhead does not create an attorney-client relationship between Clampett and MCC, one of the companies under the umbrella of the trademark. MCC presents no authority finding otherwise.

Finally, MCC posits that Missouri law recognizes an attorney-client relationship by facts showing a relationship where the attorney performs services specifically intended by the client to benefit a third party. *Donahue v. Shughart, Thomson & Kilroy,* 900 S.W.2d 624 (Mo.banc 1995), *Johnson v. Sandler, Balkin, Hellman & Weinstein, P.C.,* 958 S.W.2d 42 (Mo.App. W.D.1998). *Donahue* and *Johnson* dealt with testamentary documents and the legatees that were specifically to benefit therefrom. MCC presents no evidence to fit the instant case within the confines of *Donahue* or *Johnson;* i.e., no evidence that when MCI retained Clampett, it specifically intended Clampett's activities to benefit MCC. MCC's "understanding" of the situation does not alter this conclusion. *Multilist,* 14 S.W.3d at 114.

MCC has abandoned the elements of an attorney-client relationship in favor of attempting to create the façade of an attorney-client relationship by lumping together various bits of information regarding any kind of nexus between Clampett and MCC. However, if an agency relationship between Clampett and MCC is to be inferred, it must be inferred from a natural and reasonable construction of the facts, and not from a forced, strained or distorted construction. *Utterback,* 943 S.W.2d at 271.

For the foregoing reasons, Point I is denied.

In its second point, MCC maintains that the trial court erred in granting summary judgment in favor of Clampett on Count I because the trial court applied the wrong legal standard for summary judgment in that the existence of an attorney-client relationship is a question of fact, not law.

### Discussion

This point is disingenuous because what the trial court actually found and expressly stated was that the undisputed facts demonstrate that no attorney-client relationship existed between MCC and Clampett. The logical conclusion then was that no attorney-client relationship existed between them, as a matter of law. Where no attorney-client relationship exists, no duty exists, which *is* a matter of law. *Bunker v. Ass'n of Missouri Elec. Cooperatives*, 839 S.W.2d 608, 611 (Mo.App. W.D.1992). MCC concedes as much in its brief.

Point II is denied.

In its third point, MCC argues that the trial court abused its discretion and committed reversible error in denying MCI's motion for leave to be added as a party plaintiff because MCI has facts to show that an attorney-client relationship existed in that: (1) motions to add or substitute a party should be freely granted when justice so requires; (2) two plausible, but contradictory accounts of essential facts exists on the presence of an attorney-client relationship; (3) MCI has facts showing damage; and (4) Missouri courts generally favor a decision on the merits of a case over technical or procedural grounds.

### Discussion

■ MCI's motion was entitled "Movant [MCI]'s Motion Pursuant to Missouri Rule 52.05 and 52.06 to be Added as a Party Plaintiff." These two rules allow for motions to amend pleadings. If MCI's motion is characterized as such, then the standard of review for the trial court's denial of the motion is abuse of discretion. *Jaron Corp. v. Pellet*, 866 S.W.2d 897, 902 (Mo.App. S.D.1993). However, as we note later, we do not think MCI's motion is properly characterized as a motion to amend.

Rule 52.05(a) provides for who may join as a plaintiff as follows:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action....

Rule 52.06 provides for misjoinder and nonjoinder of parties as follows:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The trial court denied MCI's motion. MCC asserts error in that denial. However, MCC has no standing to assert error in the trial court's denial of MCI's motion. The motion was not filed by MCC.

■ Further, we find that the motion itself was improper, as it sought to amend MCC's petition, by one not even a party to the case. We believe that MCI was actually seeking to intervene in the case, and therefore should have filed a motion to intervene, pursuant to Rule 52.12(c), which provides the procedure for one not a party to a case asking the court to join as a party:

A person desiring to intervene shall serve a motion upon all parties affected thereby. The motion shall state the grounds therefor, and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene.

The improper nature of MCI's motion is inconsequential, as MCC lacks any standing to assert error in its denial by the trial court. Point III is dismissed for lack of jurisdiction.

*Conclusion*

The judgment of the trial court is affirmed.

GLENN A. NORTON, C.J., and KENNETH M. ROMINES, J., concur.