STATE of Missouri ex rel. Diane THOMPSON, Relator,

v.

Honorable Joseph S. DUEKER, Associate Circuit Judge, St. Louis County, State of Missouri, Respondent.

No. ED 96570.

Missouri Court of Appeals,
Eastern District,
Writ Division Seven.

Aug. 9, 2011.

Theodore S. Schechter, Kristen J. Dunnett, The Schechter Law Firm, P.C., Clayton, MO, for relator.

Alan E. Freed, Susan E. Block, Paule, Camazine & Blumenthal, St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Relator, Diane Thompson, seeks a writ of prohibition prohibiting respondent, the Honorable Joseph S. Dueker, from enforcing his order of March 8, 2011, which ordered the Schechter Law Firm, P.C., to withdraw from its representation of relator on a motion to modify a dissolution decree. We entered a preliminary order in prohibition, which we now make permanent.

On September 13, 2006, relator's former husband, John Christopher Thompson, (hereinafter, husband) met with attorney Jeffrey Schechter of the Schechter Law Firm. Husband subsequently engaged other counsel to represent him in the proceedings to dissolve his marriage to relator (hereinafter, wife), which proceedings commenced in October 2006, and resulted in a dissolution decree entered on September 14, 2007.

On August 2, 2010, husband, represented by the Paule, Camazine & Blumenthal law firm, filed a motion to modify the dissolution decree, in which he sought to have his modifiable maintenance obligation of $5000 per month reduced or terminated because of a change in his financial circumstances caused by the effects of the economy on his business that significantly reduced his income. On September 22, 2010, Theodore Schechter and the Schechter Law Firm entered their appearance on wife's behalf.

Husband subsequently filed a request for an order that the Schechter Law Firm withdraw from representing wife pursuant to section 4–1.9 of the Missouri Rules of Professional Conduct. In his motion, husband alleged that he had "met with Jeffrey Schechter and shared with him both personal and business information," that he "considers himself to be a former client of the Schechter firm," and that he had not consented to wife being represented by that firm. He attached a printout of the front of a check signed by husband and dated September 14, 2006, payable to The Schechter Law Firm in the amount of $140.00, with the words "Divorce Consultation" in the memo line.

At the subsequent evidentiary hearing on the motion, husband testified that he met with Jeffrey Schechter of the Schechter Law Firm in mid-September 2006. Husband testified that the meeting lasted for about an hour, during which he discussed "personal and confidential information about my business and my personal life" with Jeffrey Schechter. Husband testified that he paid the Schechter Law

Firm for the consultation. Husband believed that he contacted Jeffrey Schechter a second time by telephone and told Jeffrey Schechter that he was being represented by another lawyer. He did not have any further contact with Jeffrey Schechter, and he never spoke with anyone else at the Schechter Law Firm. Husband never signed an engagement letter with the Schechter Law Firm. Husband testified that the Schechter Law Firm did not represent him "in any way" in the subsequent dissolution action. Husband did not recall that Jeffrey Schechter ever told husband that he was husband's lawyer. Husband testified that he gave Jeffrey Schechter some confidential business information in 2006 that would "affect" his motion to modify, and that this information was never disclosed in discovery, statements of income and expense, statements of property, exhibits, or at trial in the dissolution action.

Jeffrey Schechter testified that although he had no recollection of meeting husband, he had located an office intake form which bore husband's name and some notes. From this document he concluded that he met with husband for about thirty minutes. He testified he was never engaged by husband to represent him, husband did not sign a fee agreement, and husband did not pay a retainer fee. He testified that there was nothing in his notes that did not later appear in the division of assets attached to the dissolution decree, except the date of the parties' marriage, the ages of their children, and the name of the children's school. He further testified that there was nothing in those notes that related to the 2010 motion to modify, and that his only knowledge of any communication from husband was contained in those notes.

On March 8, 2011, the trial court entered an order granting husband's request for the Schechter Law Firm to withdraw its representation of wife. Wife petitioned this court to prohibit the trial court from enforcing its order. We entered a preliminary order in prohibition and ordered briefs to be filed.

## DISCUSSION

 "A writ of prohibition is available: (1) to prevent a usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 32 (Mo. banc 2010); *see also State v. Pratte*, 298 S.W.3d 870, 880 (Mo. banc 2009). The irreparable harm category makes prohibition available "when there is an important question of law decided erroneously that would otherwise escape review by this Court, and the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 577 (Mo. banc 1994). This category allows prohibition to be considered as a remedy if a trial court disqualifies a lawyer from representing a client because the trial court's judgment, if erroneously entered, would cause considerable hardship and expense and the issue would otherwise escape appellate review. *See The Parish v. Hettenbach*, 303 S.W.3d 591, 598 (Mo.App. 2010); *State ex rel. Wallace v. Munton*, 989 S.W.2d 641, 645 (Mo.App.1999).

 In addition, " '[t]he disqualification of an attorney is a matter that lies within the sound discretion of the trial court.' " *Parish*, 303 S.W.3d at 598 (*quoting Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 133 (Mo.App.2009)). A writ of prohibition is also appropriate when a court's ruling on a motion to disqualify

counsel amounts to an abuse of discretion. *Parish,* 303 S.W.3d at 598.

■ Wife first argues that respondent abused his discretion in ordering the Schechter Law Firm to withdraw because no conflict of interest exists under Missouri Rule of Professional Conduct 4–1.9(a). We agree for the reasons that Rule 4–1.9(a), which applies to conflicts of interest with former "clients," is inapplicable because husband never retained the Schechter Law Firm to represent him; rather, husband was a "former prospective client" under Rule 4–1.18, and any conflict of interest would be governed by Rule 4–1.18, not Rule 4–1.9(a).

Rule 4–1.9(a) governs conflicts of interest with former clients. *In re Carey,* 89 S.W.3d 477, 492 (Mo. banc 2002); *Parish,* 303 S.W.3d at 600. Rule 4–1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

"To establish a conflict of interest under Rule 4–1.9, a movant must prove that: (1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant." *Parish,* 303 S.W.3d at 601.

■ An attorney-client relationship exists when a prospective client seeks and receives legal advice and assistance from an attorney who intends to undertake to provide legal advice and assistance to the prospective client in a particular matter. *Donahue v. Shughart, Thomson & Kilroy, PC,* 900 S.W.2d 624, 626 (Mo. banc 1995); *see also Parish,* 303 S.W.3d at 601; *Fox v. White,* 215 S.W.3d 257, 261 (Mo.App.2007); *Mid–Continent v. Daniel Clampett Powell,* 196 S.W.3d 595, 598 (Mo.App.2006); *Collins v. Missouri Bar Plan,* 157 S.W.3d 726, 736 (Mo.App.2005); *World Resources, Ltd. v. Utterback,* 943 S.W.2d 269, 271 (Mo.App. 1997); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 (2000).[1] In determining whether such a relationship has been established, a court looks to the "substantive nature of the contacts within the relationship, 'regardless of what formal or procedural incidents have occurred.'" *Parish,* 303 S.W.3d at 601 (quoting *McFadden v. State,* 256 S.W.3d 103, 107 (Mo. banc 2008)). Mere payment of a fee without proof that the payor received legal advice or assistance from the attorney or that the attorney intended to provide the client with legal advice or assistance, does not show an attorney-client relationship. *Mid–Continent,* 196 S.W.3d at 598 (citing *Leidy v. Taliaferro,* 260 S.W.2d 504, 507 (Mo.1953)). In addition, "belief in an attorney-client relationship is insufficient to create such a relationship." *Mid–Continent,* 196 S.W.3d at 599 (citing *Multilist Serv. of Cape Girardeau v. Wilson,* 14 S.W.3d 110, 114 (Mo.App.2000)); *see Utterback,* 943 S.W.2d at 271–72.

In this case, the undisputed evidence shows that husband did not have an attorney-client relationship with the Schechter Law Firm. The Schechter Law Firm did not represent husband in the dissolution action. Husband did not testify that dur-

---

1. The Restatement of the Law Governing Lawyers, cited several times in this opinion has been cited by the Missouri Supreme Court in deciding issues under the Missouri Rules of Professional Conduct. *See, e.g., International Materials v. Sun Corp.,* 824 S.W.2d 890, 894 (Mo. banc 1992); *In re Schaeffer,* 824 S.W.2d 1, 3 (Mo. banc 1992).

ing the consultation he sought or received any legal advice or assistance from Jeffrey Schechter, and Jeffrey Schechter testified only that he made notes about information that husband provided. There was no evidence that Jeffrey Schechter intended to give legal advice and assistance to husband.

■ Instead the evidence shows that after husband consulted with Jeffrey Schechter, husband hired someone else to represent him in the dissolution action. "A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." Rule 4–1.18(a). A former prospective client is "a person who made preliminary revelations to a lawyer during an initial consultation, but who did not thereafter enter into an ongoing client-lawyer relationship." Charles W. Wolfram, *Former–Client Conflicts,* 10 Geo. J. Legal Ethics 677, 682 n. 20 (1997);[2] *see also* Restatement (Third) of the Law Governing Lawyers § 15 (2000). Thus, husband is not a former "client," but a former "prospective client" of the Schechter Law Firm. A lawyer's duties to a former prospective client are the subject of Rule 4–1.18.[3] Rule 4–1.18(b) provides:

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 4–1.9 would permit with respect to information of a former client.

Rule 4–1.18(c) provides that a lawyer who is subject to Rule 4–1.18(b):

shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter. . . .

Comment 6 to Rule 4–1.18 restates this rule in the converse:

Even in the absence of an agreement, under Rule 4–1.18(c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter.

Comment 1 to Rule 4–1.18 explains the rationale for a more restrictive standard for a former prospective client to demonstrate a conflict:

Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.

---

2. Professor Wolfram, whose work is cited several times in this opinion, was also the Reporter for the Restatement (Third) of the Law Governing Lawyers (2000), and his work has been cited with approval by the Missouri Supreme Court on issues of legal ethics. *See, e.g., Matter of Cupples,* 952 S.W.2d 226, 233 n. 2 (Mo. banc 1997); *In re Coe,* 903 S.W.2d 916, 918 (Mo. banc 1995); *Schaeffer,* 824 S.W.2d at 3.

3. Rule 4–1.18 was adopted in 2007. It is based on ABA Model Rule of Professional Conduct 1.18, adopted by the ABA House of Delegates in February 2002. Elizabeth Cohen, *The Less You Know . . . New Model Rule Clarifies Obligations to Prospective Clients,* 88–Dec. A.B.A.J. 62 (December 2002). Parallel principles are set out in the Restatement (Third) of the Law Governing Lawyers § 15 (2000).

Thus, "[i]n the context of prospective clients, a conflict occurs not because of the fact of consultation, but because of the passing of confidential information from the prospective client to the lawyer." *Pelley v. State*, 901 N.E.2d 494, 507 (Ind.2009) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 15 (2000)); *see also* Charles W. Wolfram, *Ethics 2000 and Conflicts of Interest: The More Things Change . . . .*, 70 TENN. L.REV. 27, 60 (2002).

Accordingly, to disqualify a lawyer on the basis of a consultation with a former prospective client, not only must the matter of the consultation and the adverse matter be the "same" or "substantially related," but also the information received during the consultation must be "significantly harmful if used in the matter." Rule 4–1.18(c). Thus, one of the primary differences between Rule 4–1.9 and Rule 4–1.18 is that representation is not barred by Rule 4–1.18 "unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter." Rule 4–1.18, cmt. 6. This standard must be met before an interviewing lawyer is personally prohibited by the conflict. *See* Wolfram, *Ethics 2000, supra,* at 60–61.

The New Jersey Supreme Court has recently defined "significantly harmful" information as used in its Rule of Professional Conduct 1.18(b), which is similar to Missouri's Rule 4–1.18(c) and Comment 6. It held:

> [I]n order for information to be deemed "significantly harmful" within the context of *RPC* 1.18, disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and -specific.

*O Builders & Assoc. Inc. v. Yuna Corp.,* 206 N.J. 109, 19 A.3d 966, 976 (2011).

■ The party seeking disqualification of an attorney has the burden of persuasion and proof. *See Parish*, 303 S.W.3d at 601. A former prospective client has the same burden. "When a tribunal is asked to disqualify a lawyer based on prior dealings with a former prospective client, that person bears the burden of persuading the tribunal that the lawyer received such information." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 15 cmt. c (2000); *see also O Builders*, 206 N.J. 109, 19 A.3d at 968–69.

■ However, in contrast to Rule 4–1.9 proceedings, specific evidence of the nature and substance of the information is required in Rule 4–1.18 proceedings to establish that it is "significantly harmful;" speculative or hypothetical claims of harm are not enough. "Significantly different from the process for determining a former-client conflict under Rule 1.9, application of the new Rule 1.18 will necessarily require at least some disclosure, either by the objecting prospective client or by the lawyer, of the scope of information discussed." Wolfram, *Ethics 2000, supra,* at 60–61 (discussing ABA Model Rule 1.18); *see Pelley*, 901 N.E.2d at 507 (applying RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 15 (2000)); *In re Modanlo*, 342 B.R. 230, 237 (D.Md.2006) (applying Model Rule 1.18 as adopted by Maryland). Even prior to the enactment of ABA Model Rule 1.18 or the expression of this rule in the Restatement, the District of Columbia Court of Appeals held:

> Certainly, even if an attorney-client relationship did not exist, a party has a right to expect that a lawyer whom he sought to employ will protect confidences and secrets imparted. But if an attorney-client relationship did not exist, the party will have to show that confidences and

secrets were actually imparted. The party will not gain the benefit of an irrefutable presumption to disqualify counsel.

*Derrickson v. Derrickson,* 541 A.2d 149, 153–54 (D.C.App.1988).[4]

In *O Builders,* the New Jersey Supreme Court held that the prospective client's testimony was insufficient to satisfy her burden of demonstrating that she disclosed information that was "significantly harmful." It held:

> [D]efendant's submissions vaguely claimed only that information "concerning pending litigation and business matters" had been disclosed to Attorney Lee during the February 2008 consultation. And, Mrs. Kang's bald and unsubstantiated assertions that she "disclosed business, financial and legal information related to Yuna [C]orp. and other matters to [Attorney Lee that she] believe[d] to be related to the current law suit brought by O Builders, including discussion of [two then-pending cases, including the *Koryeo Corp.* case] and other general information about the circumstances of [her] business and legal affairs" cannot suffice to satisfy defendant's burden.

206 N.J. 109, 19 A.3d at 978 (all but first alteration in original).

In this case, husband did not seek disqualification under Rule 4–1.18 or offer the additional evidence required to support disqualification under Rule 4–1.18.[5] Husband's motion was based solely on Rule 4–1.9. Because husband was a former prospective client under Rule 4–1.18 and not a former client under Rule 4–1.9, the trial court abused its discretion when it ordered the Schechter Law Firm to withdraw from representing wife on the motion to modify under the lesser burden set out in Rule 4–1.9.

*Conclusion*

The preliminary writ of prohibition is made permanent.

PATRICIA L. COHEN, J. and GEORGE W. DRAPER III, J., concur.

---

**4.** By way of comparison, Missouri recognizes the following presumption in Rule 4–1.9 cases:

> [T]he primary concern of Rule 4–1.9 is the possibility, or the appearance of the possibility, that the attorney received confidential information from his or her former client. *Id.* Most importantly, "[w]hen a substantial relationship is found, this Court will presume that confidences were disclosed for conflict of interested purposes."

*Id.* (citing *Westinghouse Elec. Corp.[ v. Gulf Oil Corp.],* 588 F.2d [221] at 224–25 [ (7th Cir.1978) ]; *Chrispens[ v. Coastal Refining & Marketing, Inc.],* [257 Kan. 745] 897 P.2d [104] at 112 [ (1995) ]).

*Parish,* 303 S.W.3d at 603 (citing *Carey,* 89 S.W.3d at 494) (second alteration in original).

**5.** In fact, husband has never raised Rule 4–1.18 in either the trial court or this court.